[L. A. No. 25837.   In Bank.   July 20, 1961.]

GENE A. PRICKETT et al., Plaintiffs and Appellants, v. ROYAL INSURANCE COMPANY LIMITED, Defendant and Respondent.

Brown and Grisham and Roy J. Brown for Plaintiffs and Appellants.

Thomas P. Menzies and James O. White, Jr., for Defendant and Respondent.

WHITE, J.—This is an appeal by plaintiffs Gene and Virginia Prickett from a judgment in favor of defendant Royal Insurance Company in an action for a declaration of liability under an insurance policy.

In April of 1957, the Pricketts purchased a residence constructed five years earlier in San Pedro, acquiring as part of the purchase an insurance policy which had been carried by their vendors. The policy, written by the defendant insurance company, was a "comprehensive dwelling policy" which insured the home against "all risks of physical loss" except those losses specifically excluded from coverage. Among the latter were losses occasioned by ". . . normal settling, shrinking or expansion of foundation, walls, floors or ceilings."

Plaintiff Gene Prickett testified that at the time of purchase an inspection had revealed no defect in the walls or foundation of the house. He further testified that when he returned home on the evening of March 10, 1958, he found that since that morning the west wing of the house, specifically the west masonry wall thereof, had sunk some 5 to 7 inches on one side and 12 inches on the other, causing openings in the wall, and further resulting in a rupture of the radiant heating system pipes. There is nothing in the record from which it may be inferred that the damage did not occur as suddenly as, and in the manner described by Mr. Prickett.

A soil engineer sent by defendant to inspect the Prickett premises testified as an expert that the sinking was attributable to the fact that the west wing of the house rested on land which had been filled up to a depth of 35 feet with improperly compacted soil, and that under these circumstances it was inevitable that some sinking would eventually occur. The engineer also testified as an expert that there was no accepted definition in the construction industry of what constitutes "normal settling." A building contractor who had surveyed the damage testified that he estimated the cost of repairs to be more than the $7,550, which plaintiffs allege to be the reasonable damage to the home. No extrinsic evidence was introduced to aid in interpreting the policy.

The trial court found that the house rested in part on improperly filled land. It held that the sinking of the west masonry wall and resulting damage was attributable to "normal settling" of the foundation and walls and that the loss therefore fell within the terms of the policy's exclusionary clause and was noncompensable under the policy's terms. The issue presented, then, is whether as a matter of law the

trial court properly interpreted the term "normal settling," as employed in the exclusion clause of a comprehensive dwelling policy insuring against all risks of physical loss.

An appellate court is not bound by a trial court's interpretation of an uncertain or ambiguous contractual term where the lower court's determination has been made without resort to extrinsic evidence. " '[T]here is no issue of fact, and it is the duty of an appellate court to make the final determination in accordance with the applicable principles of law.' " (*Meyer* v. *State Board of Equalization,* 42 Cal.2d 376, 381 [267 P.2d 257] quoting from *Estate of Platt,* 21 Cal.2d 343, 352 [131 P.2d 825].) "However, it is also the rule that where no extrinsic evidence has been introduced, the interpretation placed upon the contract by the trial court will be accepted by this court if such interpretation is reasonable, or if the interpretation of the trial court is one of two or more reasonable constructions of the instrument." (*Lundin* v. *Hallmark Productions, Inc.,* 161 Cal.App.2d 698, 701 [327 P.2d 166].)

When the contract is a policy of insurance, the latter rule operates subject to the well-established rule of construction "that provisos and exceptions must be strictly construed against the insurer, who is bound to use such language as to make the conditions, specifications and provisions thereof clear to the ordinary mind, and in case it fails to do so any ambiguity or reasonable doubt must be resolved in favor of the assured." (*Kautz* v. *Zurich Gen. Acc. & Liability Ins. Co.,* 212 Cal. 576, 580 [300 P. 34].) Thus, wherever it is semantically permissible, the contract will be given such construction as will most fairly achieve the object of securing indemnity to the insured for the losses to which the insurance relates. (*Continental Cas. Co.* v. *Phoenix Constr. Co.,* 46 Cal. 2d 423, 437 [296 P.2d 801, 57 A.L.R.2d 914] and cases cited therein; see also *Arenson* v. *National Automobile & Cas. Ins. Co.,* 45 Cal.2d 81, 83 [286 P.2d 816]; *Glickman* v. *New York Life Ins. Co.,* 16 Cal.2d 626 [107 P.2d 252, 131 A.L.R. 1292]; *Miesen* v. *Bolich,* 177 Cal.App.2d 145, 151-152 [1 Cal.Rptr. 912]; *Artukovich* v. *St. Paul-Mercury Indemnity Co.,* 150 Cal. App.2d 312, 324 [310 P.2d 461]; *Ritchie* v. *Anchor Casualty Co.,* 135 Cal.App.2d 245, 251-253 [286 P.2d 1000].)

We are thus called upon to choose between two interpretations of the term "normal settling": the one adopted by the trial court which would place all events resulting naturally from the set of physical facts obtaining at the time of the

policy's execution—in this case, the fact of the deep and improper fill—within the meaning of the exclusionary term; and the interpretation that only settling which is in its *extent* normal and expectable to any homeowner buying such an insurance policy is properly to be considered "normal"[1] settling. Under the rules of insurance policy construction referred to above, the trial court should have applied that construction which, from the insured's point of view, would most fairly achieve the object of securing indemnity for losses to which the insurance relates. (*Kautz* v. *Zurich Gen. Acc. & Liability Ins. Co., supra,* 212 Cal. 576.) In *Arenson* v. *National Automobile & Cas. Ins. Co., supra,* 45 Cal.2d 81, 83, this court stated that "The understanding of an ordinary person is the standard used in construing a contract of insurance, and any ambiguity in language must be resolved against the insurer. (*Ransom* v. *Penn. Mut. Life Ins. Co.,* 43 Cal.2d 420, 424-425 [274 P.2d 633].)" Certainly, an ordinary person, the vendee, would not regard the 12-inch drop of a wall, accompanied by open breaks in the wall and the decommissioning of the house's heating system as a "normal" settling, especially where these events take place suddenly without warning or previous visible indication of such drastic consequences.

When the foregoing construction is applied to the policy, the damage suffered by plaintiffs does not fall within the exclusionary clause and plaintiffs are entitled to recovery therefor.

The judgment is reversed.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Peters, J., and Dooling, J., concurred.

---

[1] Webster's New Collegiate Dictionary, 1959 ed., p. 572: "According to, constituting, or not deviating from, an established norm, rule, or principle; standard; regular; natural." Synonyms: "the usual condition, degree, quantity, or the like; average; mean."