[Civ. No. 41.   Fifth Dist.   Mar. 26, 1962.]

W. A. BANKS, Plaintiff and Appellant, v. BILL CLINT-
WORTH et al., Defendants and Respondents.

Di Giorgio & Davis, Vincent P. Di Giorgio and Thomas R. Davis for Plaintiff and Appellant.

Vizzard, Baker, Sullivan & McFarland and Jere N. Sullivan for Defendants and Respondents.

CONLEY, P. J.—In a declaratory relief suit the trial court determined that certain pumping equipment was not the property of the plaintiff lessor but belonged to the defendant lessees and that such equipment did not constitute fixtures. Plaintiff and defendants are successors in interest of the lessor and lessee named in a master lease made and entered into on December 16, 1950. The plaintiff herein, W. A. Banks, acquired the ownership of the leased land in the year 1959 and succeeded to all of the rights of the original lessor. The original lessee subleased to one Dipple, who in turn subleased to Turner, who thereafter subleased to the defendants, Bill Clintworth and B. F. Hord, individually and doing business under the firm name and style of Clintworth and Hord.

The parties stipulated that they were bound by the terms of the original lease.

The land involved is a half section in Kern County. The term of the lease was five years with an option which was exercised for an additional five years. For the first three years

no money rental was required; for the two succeeding years payment was to be made to the lessor at the rate of $5.00 per acre per year; and for the optional five-year period rental was payable at the rate of $7.50 per acre per year.

The lease contains the following provisions:

"Lessee agrees to drill a well and use every means possible to secure a good well.

"    .    .    .    .    .    .    .    .    .

"Lessee will drill well as above stated, level land as required to put in cotton crop and make any improvements necessary to carry on farm operations, at termination of lease all improvements as to well, motor and if any buildings and etc. to remain on the property. It is agreed and understood that the lessee has the sole privilidge [sic] to sublease any or all of this land at any period of this lease. Lessee agrees to keep land as clean as possible at all times[.] Lessee agrees to pay all County Taxes for term of this lease."

In plaintiff's amended complaint for declaratory relief it is alleged: "That during the term of said lease, and as extended, the original lessee and the defendants herein, as successor lessee, have made various permanent improvements upon the said premises as were necessary to carry on farm operations thereon; that some of the said permanent improvements placed on the said described premises as were necessary to carry on farm operations thereon consist of a pump, bowls, engine, motor and other paraphernalia appertaining to the two presently existing water wells on said premises"; that the defendants threaten to remove the pumping equipment and convert the same to their own use; that an actual controversy exists as to the ownership of the equipment.

At the time defendants took possession under their sublease of March 21, 1952, there were no working wells on the property, but only an abandoned well without pump or equipment. Defendants drilled well number one in 1952, which they equipped with a pump column, bowls and motor; it was used for two years and was never as good a well as was expected. Defendants drilled a second well a year or so later; all the property was farmed with the aid of this second well. The first well was abandoned sometime during the third season. The pump and other equipment were removed from well number one and placed on a third well drilled by defendants. Well number two is a working well equipped with an electric motor and pump which remain on the premises. The equipment for well number one which was removed to well number

three originally cost between $20,000 and $25,000; its approximate market value today was estimated to be from $8,000 to $12,000.

Mr. Hord testified that number three was never a good well, and it never equaled in quality or production either well number one or two; number three was used for only one season and then "went completely out." Defendants pulled the pump out of well number three; they left the casing in the ground but claim ownership of the engine, pump and equipment which are on top of the ground.

The court found that the defendants' lease expired January 1, 1961; that there is now one existing well on the premises; that before the expiration of the lease defendants informed plaintiff that they intended to remove and take away the pump and equipment from the number three well; that plaintiff has no right to the number three equipment; that it never constituted realty; that the lease was not an improvement lease; that the property in question was and is the personal property of defendants.

Plaintiff argues that the "pivotal" question is whether the pumping equipment on well number three was an "improvement" under California law, because the lease explicitly required that ". . . all improvements as to well, motor and if any buildings and etc. . . . remain on the property." The lease refers to "well" in the singular three times before the word "improvements" is included; it would seem the latter refers to other types of improvement. After the word "improvements," the word "well" is again used in the singular form, as is "motor"; however, "buildings" is plural. Thus, in four places the lease indicates that only one well need be left.

Although the lease is uncertain and ambiguous, no extrinsic evidence was offered as an aid to its interpretation. We believe that the trial court's interpretation of the document is reasonable.

The applicable law as to this portion of the appeal is succinctly stated in *Prickett* v. *Royal Ins. Co., Ltd.*, 56 Cal.2d 234, 237 [14 Cal.Rptr. 675, 363 P.2d 907] : "An appellate court is not bound by a trial court's interpretation of an uncertain or ambiguous contractual term where the lower court's determination has been made without resort to extrinsic evidence. ' " [T]here is no issue of fact, and it is the duty of an appellate court to make the final determination in accordance with the applicable principles of law." ' (*Meyer*

v. *State Board of Equalization,* 42 Cal.2d 376, 381 [267 P.2d 257] quoting from *Estate of Platt,* 21 Cal.2d 343, 352 [131 P.2d 825].) ██ 'However, it is also the rule that where no extrinsic evidence has been introduced, the interpretation placed upon the contract by the trial court will be accepted by this court if such interpretation is reasonable, or if the interpretation of the trial court is one of two or more reasonable constructions of the instrument.' (*Lundin* v. *Hallmark Productions, Inc.,* 161 Cal.App.2d 698, 701 [327 P.2d 166].)"

The same rule is set forth in *Estate of Northcutt,* 16 Cal.2d 683, 690 [107 P.2d 607], as follows: "And the rule is well settled that where the construction given to an instrument by a trial court is reasonable and appears to be consistent with the intent of the party making it, courts of appellate jurisdiction will not substitute another interpretation, even though it may seem equally tenable with that accorded by the trial court."

In the case of *Teater* v. *Good Hope Dev. Corp.,* 14 Cal.2d 196 at page 210 [93 P.2d 112], the court says: " 'The question now presents itself: Would the tools, machinery and equipment removed come under and be classified by the second provision of the contract or were they a part of the realty? When the construction given an instrument by a trial court appears to be reasonable and consistent with the intent of a party, appellate courts will not substitute another interpretation though it seems equally tenable.' " (See also *Manhattan Beach* v. *Cortelyou,* 10 Cal.2d 653, 660 [76 P.2d 483] ; *Kautz* v. *Zurich General A. & L. Ins. Co.,* 212 Cal. 576, 582 [300 P. 34] ; *McNeny* v. *Touchstone,* 7 Cal.2d 429, 435 [60 P.2d 986] ; *Adams* v. *Petroleum Midway Co., Ltd.,* 205 Cal. 221, 224 [270 P. 668] ; *Farmers & Merchants' Nat. Bank* v. *Bailie,* 138 Cal. App. 143, 149 [32 P.2d 157] ; *Slama Tire Protector Co.* v. *Ritchie,* 31 Cal.App. 555 [161 P. 25] ; *Manley* v. *Pacific Mill & Timber Co.,* 79 Cal.App. 641, 648 [250 P. 710].)

██ We therefore uphold the trial court's construction of the lease, and turn to the other question raised by appellant, namely, whether by virtue of the manner of its use on the property the pumping equipment became a fixture.

██ In the case of *R. Barcroft & Sons Co.* v. *Cullen,* 217 Cal. 708 [20 P.2d 665] at page 711, it is said: "Whether or not an article annexed to the real property is a fixture is a question of fact to be determined upon the evidence in the particular case. (*Gosliner* v. *Briones,* 187 Cal. 557 [204 P. 19] ; *Bianchi* v. *Hughes,* 124 Cal. 24 [56 P. 610].) ██ The

question is determined not only by the manner in which the article is annexed to the realty, but also by the relationship between the parties to the controversy. (12 Cal.Jur., 569, § 8.)''

Plaintiff cites *Bell* v. *Bank of Perris*, 52 Cal.App.2d 66, 72 [125 P.2d 827], as holding that pumping equipment is a part of the realty. This case concerns a mortgagor-mortgagee relationship, and the court said: ''The relationship between the parties . . . must be taken into consideration. . . . Personal property which would assume the status of real property, if affixed thereto by the owner or mortgagor, would not assume the status of real property if affixed thereto by a tenant.''

The authorities apply a threefold test in determining whether or not an article is a fixture: '' (1) the manner of its annexation; (2) its adaptability to the use and purpose for which the realty is used; and (3) the intention of the party making the annexation.'' (*Bell* v. *Bank of Perris, supra*, 52 Cal.App.2d 66, 73.) (See also 22 Cal.Jur.2d, Fixtures, § 5, p. 259; and *Fratt* v. *Whittier*, 58 Cal. 126 [41 Am. Rep. 251] at p. 131.)

Defendants' exhibit A shows by picture that the equipment was on wooden blocks, on top of the ground, with no permanent foundation. In the *Bell* case, *supra*, 52 Cal.App. 2d 66, the pump was on a cement foundation, affixed with cement grouting, and each pump was protected by a pump house from which the pump could be removed only by taking off part of the sides and the roof. With respect to the present equipment, defendant Hord testified that ''it actually isn't fastened to it in any way,'' and that no permanent foundation was put in but that, ''It was standing on wooden blocks.''

There was uncontroverted testimony that the number three well had been abandoned because it was a complete failure and that the equipment only remained on the leased premises because there was no other use for it at that time. Defendants leveled the land and drilled three wells in trying to obtain a good working well and conceded that well number two, the most productive well, with its equipment, would remain in use on the premises at the expiration of the lease. There was testimony that well number two was as good as could be expected for that area. It was reasonable for the trial court to consider that there was no intention to make a gift of equipment costing $20,000 or $25,000 to the owner of the premises.

In *M. P. Moller, Inc.* v. *Wilson*, 8 Cal.2d 31, 38 [63 P.2d 818], it is pointed out that ''Whether under the circum-

stances of each case the property has lost its character as personalty and has become a fixture is primarily a question of fact to be determined by the evidence. [Citation.]''

The same principle is thus stated in *Plough* v. *Petersen,* 140 Cal.App.2d 595, 596 [295 P.2d 549, 55 A.L.R.2d 1042] : ''Whether a certain object in a house is a fixture or personalty is a question of fact and various factors must be considered, such as the manner of its annexation, its adaptability to the purpose for which the realty is used, and the intention of the party making the annexation.'' (See also *Simms* v. *County of Los Angeles,* 35 Cal.2d 303, 309 [271 P.2d 936] ; *Knell* v. *Morris,* 39 Cal.2d 450, 456 [247 P.2d 352].)

As the trial court's construction of the lease is reasonable, we uphold it even though a different construction advocated by the appellant would also be reasonable; and the finding of the trial court that the pumping equipment was not part of the realty and that therefore it is not a fixture is amply supported by the evidence, and must be sustained.

The judgment is affirmed.

Brown, J., and Stone, J., concurred.