[Civ. No. 10555.   Third Dist.   June 3, 1963.]

STEINER LUMBER COMPANY OF SACRAMENTO, INC., et al., Plaintiffs and Appellants, v. DAVID M. SAPP, Defendant and Respondent.

Lewis & Lewis, George B. Hendry for Plaintiffs and Appellants.

Rubin, Seltzer & Solomon and Richard I. Singer for Defendant and Respondent.

PIERCE, P. J.— The question on this appeal is whether a certain contract of guaranty covered indebtedness incurred after the date the contract bears (September 1, 1959) or only after the date it was actually signed (April 1, 1960). We hold that the earlier date applies.

In August or September 1959, Jim Dowd, vice-president and one of the owners of the two plaintiff corporations (hereinafter collectively called "Steiner"), appellants in this court, discussed future sales of lumber to defendant corporation (hereinafter called "Rancho") with William Dacy, an officer of the latter corporation. Dowd stated to Dacy it was the usual practice of Steiner to require a written guaranty of the account by the principals of a purchasing corporation. Dacy assured Dowd "there would be no problem" but that it would be impossible to obtain the signature of defendant David M. Sapp (respondent on this appeal), an officer and principal shareholder of Rancho, until the latter's return from a European trip.

On or about April 1, 1960, a meeting took place at the Sacramento airport between Sapp, Dacy and John Binder, the secretary-treasurer of Steiner. Prior to that meeting no guaranty had been signed. In the meantime Steiner had de-

livered lumber to Rancho on which $30,699.45 was owing.

At this meeting Binder brought up the fact that the account was from 60 to 90 days overdue and that Steiner wanted the personal guaranty that had been promised by Dacy in September of 1959. He presented a form of guaranty and asked Dacy and Sapp to sign it. Sapp asked if he could take it with him to San Diego since he was in a hurry to get on the plane.

The form of guaranty which Binder handed to Sapp and which the latter took with him to San Diego bears the date "September 1, 1959,"[1] and its provisions insofar as they are essential to this controversy are as follows:

"1. For valuable consideration, the undersigned hereinafter called Guarantors, jointly and severally unconditionally guarantee and promise to pay to Steiner Lumber Company of Sacramento and/or Steiner Lumber Co. of Carmichael, Inc., a California corporation, or assigns, hereinafter called Seller, any and all indebtedness incurred by Rancho Cordova Builders, Inc. . . . hereinafter called Buyers, by reason of the purchase from Seller of building materials. . . .

"2. It is understood and agreed that this is a continuing guaranty and until revoked shall cover all future indebtedness as contemplated hereunder, including that arising under successive transactions which shall either continue the indebtedness or from time to time renew it after it has been satisfied."

Defendant Sapp returned the guaranty with his signature affixed without alteration of the original provisions but he added another provision to the agreement requiring Steiner to give 30 days' notice of default. He mailed the signed document to Dacy who added his signature and delivered the agreement to Steiner.

After April 1, 1960, Steiner sold building materials to Rancho amounting to more than $61,000. At the close of all transactions there was an unpaid balance of $21,823.95 for which Steiner sued the corporation and two guarantors. The obligation of Rancho for this balance was not questioned. No appearance was made by guarantor Dacy and the record does not disclose whether he was served. No judgment was taken against him. Defendant Sapp appeared separately. It was his contention that the guaranty applied only to de-

---

[1]This date is immediately above the signature of "David M. Sapp" who was the first of the two guarantors to sign it.

liveries of lumber made after April 1, 1960, and that since payments made by Rancho to Steiner, "earmarked" to be applied on lumber purchased after that date, more than totaled deliveries made during that period, there is no liability under the guaranty.

Both parties to this appeal agree that the contract of guaranty is clear and free from ambiguity. But their views are antipodal as to whether its "crystal clear" meaning is that the guarantors were obligated for purchases of lumber made after September 1, 1959, as Steiner contends, or for purchases made after April 1, 1960, only, as Sapp argues.

The trial court accepted the latter's contention and gave judgment in his favor. (The corporation "Rancho" has not appealed from the judgment against it.)

The reasoning and theory of the trial judge are clearly set forth in a comprehensive memorandum opinion. This opinion, while it cannot be considered in determining whether the findings are supported by the evidence, may be noted by us for the purpose of discovering the trial judge's reasoning in reaching his decision. (*Union Sugar Co.* v. *Hollister Estate Co.*, 3 Cal.2d 740, 750 [47 P.2d 273].)

In the opinion the trial court cites and quotes from Civil Code section 2814 as follows: "A guaranty relating to a future liability of the principal, under successive transactions, which either continue his liability or from time to time renew it after it has been satisfied, is called a continuing guaranty." (It stresses the word "future" in that definition.)

The opinion also stated the general rule that all guaranties are prospective in operation unless the contrary appears by express words or necessary implication. (*Bank of America* v. *Kelsey*, 6 Cal.App.2d 346 [44 P.2d 617].) The judge then referred to paragraph 2 of the written guaranty which states, "this is a continuing guaranty and until revoked shall cover all future indebtedness . . . ," and observed that it followed the wording of Civil Code section 2814, *supra.* He concluded, therefore, that the guaranty was intended to be prospective in operation, not retroactive

*But prospective as of what date?* The trial court held it to be prospective as of April 1, 1960, the date it was signed. There is not a word in the opinion suggesting that the court gave any consideration to the fact that the written guaranty, although actually signed on or about April 1, 1960, *is back-*

*dated to September 1, 1959, when deliveries of lumber by Steiner to Rancho had commenced.*

It is a statutory rule of interpretation that all provisions of the contract must be given meaning whenever it is possible to do so, "each clause helping to interpret the other." (Civ. Code, § 1641; *Pico Citizens Bank* v. *Tafco Inc.*, 165 Cal. App.2d 739, 746 [332 P.2d 739].) If the date "September 1, 1959" is to be given any meaning (considered in the light of attending circumstance that the contract was actually signed April 1, 1960) then its meaning must necessarily be to explain both clauses; that in paragraph 1 which says "any and all indebtedness incurred by Rancho . . . ," and that in paragraph 2 which reads "and until revoked shall cover all future indebtedness."

These clauses read in context with the contract's date, then each clearly means: "Any and all indebtedness incurred by Rancho . . . *after September 1, 1959*" and "and until revoked shall cover all future indebtedness *after September 1, 1959.*" Use of the backdate, September 1, 1959, therefore, is *the* crucial fact in the interpretation of this contract. Yet it is a fact which the trial court, as is made clear by the memorandum opinion, did not consider at all.

Use of the back-date, September 1, 1959, *had* to be deliberate; it was planned. It could not have been accidental or inadvertent. And this is true whether the document itself was actually drafted on or about September 1, 1959, when Dacy promised Dowd that obtaining the guaranty would be "no problem," or whether it was drawn just before April 1, 1960. It was also deliberate because deliveries of lumber commenced immediately after September 1st. Being deliberate, the contract, as stated above, becomes so clear that any attempt at "interpretation" by disputative extrinsic evidence defies the parol evidence rule. It would be to show that the parties meant something other than what they said and not to show what they meant by what they said. (*Barham* v. *Barham*, 33 Cal.2d 416, 423 [202 P.2d 289]; *Imbach* v. *Schultz*, 58 Cal.2d 858 [27 Cal.Rptr. 160, 377 P.2d 272].)

This contract needed no extrinsic evidence to explain its terms and the trial court did not consider extrinsic evidence. This is apparent from its opinion. It is also clear from observations made during the trial. The judge stated: "I was just thinking here, in the interest of time, rather than going into the question of what he felt that the intent of these various words was, that that is a matter of interpretation for the

Court." He also stated that "the written instrument speaks for itself."

Notwithstanding this, when findings were drawn the following appear therein, "plaintiffs represented to the defendant David M. Sapp that the said continuing guaranty would apply only to future sales" and that the defendant "relied upon said representation by plaintiffs. . . ."

Our study of the record discloses no evidence of such or any representations or reliance. There was during the re-direct examination of defendant Sapp a statement by him (nonresponsive to the question asked) that Mr. Binder, when told about the commencement by Rancho of new jobs at Yuba City requiring some 60 or 70 thousand dollars of lumber, stated Steiner would not sell the lumber without a guaranty covering payment of the purchase price. But nothing connected this to any interpretation of the written agreement which is before the court.

There being no relevant extrinsic evidence supporting the trial court's conclusion, and the state of the record being such that we are compelled to find that the trial court's interpretation of the contract is incorrect as a matter of law, we must reverse the judgment.

It is stated in 3 Witkin, California Procedure, Appeal, Review of Interpretation of Writings, section 89, page 2253: "Where no competent extrinsic evidence has been introduced, and the interpretation is derived solely from the terms of the instrument . . . [t]he question is one of *law* . . . . (*Estate of Platt* (1942) 21 Cal.2d 343, 352 [131 P.2d 825]; *Alkus* v. *Johnson-Pac. Co., supra* [80 Cal.App.2d 1, 8 (181 P.2d 72)]; *Estate of Norris* (1947) 78 Cal.App.2d 152 [177 P.2d 299].)"

To this court, as stated above, the interpretation we have given the contract of guaranty is not only more reasonable, it is the only interpretation which gives meaning to the deliberate backdating of the contract.

That portion of the judgment appealed from is reversed and the trial court is directed to enter judgment for plaintiff for the amount prayed for in the complaint, with interest.

Schottky, J., and Friedman, J., concurred.

Respondent's petition for rehearing was denied on June 28, 1963, the opinion was modified to read as above, and the following opinion was then rendered.

THE COURT—In our opinion, quoting from 3 Witkin, Cali-

fornia Procedure, page 2253, we stated (ante, at p. 805): "the appellate court is not bound by the trial judge's construction, even though it may be permissible and reasonable . . . and the appellate court will give the writing a different interpretation if this appears more reasonable."

This statement is in conflict with that part of the opinion of our Supreme Court in *Pickett* v. *Royal Ins. Co., Ltd.*, 56 Cal.2d 234 [14 Cal.Rptr. 675, 363 P.2d 907, 86 A.L.R. 2d 711], where the court (per White, J.) states at page 237:

"An appellate court is not bound by a trial court's interpretation of an uncertain or ambiguous contractual term where the lower court's determination has been made without resort to extrinsic evidence. ' "[T]here is no issue of fact, and it is the duty of an appellate court to make the final determination in accordance with the applicable principles of law." ' (*Meyer* v. *State Board of Equalization*, 42 Cal.2d 376, 381 [267 P.2d 257] quoting from *Estate of Platt*, 21 Cal.2d 343, 352 [131 P.2d 825].) '*However, it is also the rule that where no extrinsic evidence has been introduced, the interpretation placed upon the contract by the trial court will be accepted by this court if such interpretation is reasonable, or if the interpretation of the trial court is one of two or more reasonable constructions of the instrument.*' (*Lundin* v. *Hallmark Productions, Inc.*, 161 Cal.App.2d 698, 701 [327 P.2d 166].)" (Italics supplied.)

Our opinion should be and is modified by deletion of the phrase quoted above. However, as we have also held in our original opinion:

"To this court, as stated above, the interpretation we have given the contract of guaranty is not only more reasonable, it is the only interpretation which gives meaning to the deliberate backdating of the contract."

We have not changed our opinion that the interpretation we have given the contract is the only one which can reasonably be given.

With the modification above noted, the petition for rehearing is denied.

Respondent's petition for a hearing by the Supreme Court was denied July 31, 1963.