[Civ. Nos. 26913, 26914. Second Dist., Div. Four. Aug. 8, 1963.]

Estate of MAE R. SHARFF, Deceased. DAVID DENSON et al., Plaintiffs and Appellants, v. EDNA M. HILL, as Executrix, etc., et al., Defendants and Respondents.

(Two Cases.)

130

David C. Marcus for Plaintiffs and Appellants.

Harrison Weil, David Sefman, Pacht, Ross, Warne & Bernhard, Henry J. Shames and Harvey Zuckman for Defendants and Respondents.

KINGSLEY, J.—Plaintiffs instituted two suits against the Estate of Mae R. Sharff, and others. Suit number 723066 was for breach of a written contract to make a will, and suit number P-427590 was pursuant to section 850 of the Probate Code, for specific performance of a written contract to convey real and personal property. Due to the related nature of these two actions they were tried together by the court without a jury. Judgment was entered for defendants, and plaintiffs now appeal.

The deceased, Mae R. Sharff, was an elderly widow who was a resident of Los Angeles, California. Some time in the early part of May 1958 deceased made a trip to New York City and visited plaintiffs, who were her niece and nephew. After her return to California, in the latter part of May 1958, there was extensive correspondence, both by telephone and letter, between the deceased and plaintiffs. In the course of this correspondence, plaintiffs expressed their desire to eventually come to California. Deceased, both by letter and telephone, was insistent that plaintiffs immediately come to California and live with her, rent free, in her house (which she referred to as her "Haven of Joy"). Plaintiffs, however, were somewhat hesitant at immediately moving to California because their ties, both business and social, were in New York City. Deceased, seeking their immediate departure from New York City, lent plaintiffs $2,500 to help in the winding up of their affairs, thereby expediting their move to California. Finally, in December of 1958, plaintiffs arrived in Los Angeles and immediately commenced living with the deceased in her house. In January of 1959, deceased moved out of her house because a feud had erupted between her and plaintiffs. Deceased commenced staying at a friend's house in Santa Monica, California. In March of 1959, deceased instituted an unlawful detainer action against plaintiffs in order to get them out of her house. A judgment by default was entered in favor of deceased in that action, and plaintiffs moved out. In January 1960 the deceased died testate leav-

ing her entire estate to friends, to the complete exclusion of plaintiffs.

The plaintiffs contend that a letter from the deceased to plaintiffs dated August 29, 1958,[1] was either (1) a contract between them and deceased, whereby deceased agreed to devise and bequeath certain real and personal property to plaintiffs in consideration of plaintiffs moving from New York City to California and living with her and giving her mutual love and affection, or, (2) if this letter was not a contract it was a written memorandum of an oral agreement to make a will signed by the party to be charged, whose terms could be proved by parol.[2]

The trial court made findings to the effect that decedent had not, by the letter relied on, entered into a contract with plaintiffs to devise the property involved, that she had never made any oral or written contract to that effect, that plaintiffs' removal to California was not in reliance on the letter of August 29th or in reliance on any other promise or agreement, and that there was no contract of any kind between plaintiffs and decedent to devise or to convey the property to plaintiffs.

Although set forth in five assignments of error, the plaintiffs' grounds of appeal are (1) that the findings were not supported by the evidence and (2) that the trial court was guilty of misconduct which denied them a fair trial.

I

Plaintiffs place strong reliance on *Wolf* v. *Donahue* (1929) 206 Cal. 213 [273 P. 547]; *Davis* v. *Jacoby* (1934) 1 Cal.2d 370 [34 P.2d 1026], and on *Jones* v. *Clark* (1941) 19 Cal.2d 156 [119 P.2d 731], where, on facts closely analogous to the

---

[1]That part of the letter of August 29, 1958, which plaintiffs claim constitutes a contract to make a will, or a written memorandum of such contract, reads as follows:

''There is so much to talk over for us——DO——too! But it must wait until you get here. In the *meantime*—since we are in God's hands— and no one knows—I want you to know that there is a hand-written will in my vault—specifying the home—1456 So. Ogden Drive —and all furniture and personal belongings to 'you and David'—and another paper—making dispositson of my jewelry to each one I want it to go to. To you Bea—my Diamond Watch—a Diamond pin—and a Diamond ring to match the watch—so far I haven't made any other disposition! Hope and Pray—we will all be inscribed in the Book of Life for this year—and in time I'll do it the right way!''

[2]During trial plaintiffs amended their complaint in order to conform to proof, alleging that there was an oral contract to make a will and that the letter of August 29, 1958, was a written memorandum thereof.

132

case before us, the court decreed specific performance of a contract to make a will. However, in those cases the court found that a contract to make a will in fact existed. In the present case, while it is conceivable that a finding could have been made that the letters and telephone conversations resulted in a contract to make a will, the finding made by the court that no such contract either written or oral resulted from such communications is more than an equally reasonable interpretation which supports the trial court's findings.

It is well settled that, where the interpretation of a writing is dependent on the evaluation of conflicting evidence, and there is evidence which is consistent with the trial court's conclusion, it will not be disturbed on appeal. (*Salmon* v. *Allen* (1934) 1 Cal.App.2d 115, 119 [36 P.2d 153].) Also, where ambiguity exists in a writing, the determination is primarily for the trial court, and if the construction reached by it is not unreasonable, it too will be supported on appeal. (*Prickett* v. *Royal Ins. Co. Ltd.* (1961) 56 Cal.2d 234 [14 Cal.Rptr. 675, 363 P.2d 907]; *O'Hare* v. *Peacock Dairies, Inc.* (1938) 26 Cal.App.2d 345, 354 [79 P.2d 433].)

Since the trial court specifically found that no contract, either oral or written, was entered into between plaintiffs and decedent, which finding is supported by the evidence, there was no error in denying plaintiffs their petition for a decree of specific performance, or their petition for a conveyance of real and personal property pursuant to an agreement to make a will as provided by section 850 of the Probate Code.

II

We can find no error in the trial court granting judgment to defendants pursuant to the provisions of section 631.8 of the Code of Civil Procedure, since, as indicated, there is substantial evidence from a reading of the letters and testimony received to support the trial court's decision in this regard. Unlike a motion for nonsuit, where on appeal all intendments are in favor of the appellant, the court, in acting on a motion under section 631.8, "shall weigh the evidence" and its findings are entitled to the same respect as are any other findings of a trial court.

III

Finally, plaintiffs contend that the trial court did not grant them a fair and impartial trial, because, during the initial presentation of their case, the court displayed an annoyance at the manner in which plaintiff, David Denson, re-

sponded to the questions propounded to him. Also, the court did not believe the testimony of plaintiffs' witness, Sada Shack. However, plaintiffs' own counsel displayed the same annoyance because plaintiff, David Denson, was not responsive to the questions put to him. The action of the court was merely to admonish plaintiff to be more responsive to the questions.

■ It requires no citation of authority that the credibility of witnesses is for the trial court and that the court's judgment will not be overturned on appeal unless it is manifestly wrong. ■ Here the evidence amply justified the trial court's rejection of Sada Shack's testimony. She testified that, *immediately upon the decedent's return to California,* decedent told her that plaintiffs were coming to live with her in California, and that she would lend to them $2,500 to help them wind up their affairs in New York. Sada Shack further testified that, soon after this conversation, Sada made a trip back to New Jersey where she remained for some six or seven months. Plaintiff, David Denson, by his own testimony, testified that the $2,500 loan was not discussed until some three or four months after the decedent's return to California. The plaintiffs are without merit in their contention that the court did not render them a fair and impartial trial.

The judgment and order appealed from are affirmed.

Burke, P. J., and Jefferson, J., concurred.

A petition for a rehearing was denied August 28, 1963, and appellants' petition for a hearing by the Supreme Court was denied October 1, 1963.