256 Cal.App.2d 647 (1967)
Estate of CHARLES A. CANFIELD, Deceased. LAURA ELAINE CANFIELD PIERCE, Petitioner and Respondent,
v.
CAROLINE CANFIELD SPAULDING et al., Objectors and Appellants; TITLE INSURANCE AND TRUST COMPANY, Trustee and Respondent.
Civ. No. 31780. 
California Court of Appeals. Second Dist., Div. Two. 
Dec. 5, 1967.
 Gibson, Dunn & Crutcher, John T. Pigott and Charles S. Battles, Jr., for Objectors and Appellants.
 Birger Tinglof for Petitioner and Respondent.
 No appearance for Respondent Trustee.
 HERNDON, J.
 This is an appeal from that portion of an order of the probate court entered on June 3, 1966, which directed the trustee of a testamentary trust to distribute to respondent Laura Elaine Canfield Pierce one-half of the principal of the trust estate remaining in the hands of the trustee on June 15, 1965.
 The resolution of the controversy presented to the court below by the parties to this appeal involved the construction of the distributive provisions of an order of the probate court which was entered more than 53 years ago and which was designed to create the trust in conformity with the decedent's testamentary directions as contained in his will dated August 29, 1912. The duty devolving upon this court of review is to decide whether or not the interpretation the court below placed upon the language of the distributive provisions of the trust was a reasonable and tenable construction. Having made our own independent evaluation of the divergent constructions *649 urged by the parties, we have concluded that the trial court's decision must be affirmed as a reasonable one.
 The last will of Charles A. Canfield, as we have said, was executed in 1912. By the terms of this will the testator made unqualified bequests of $1,000,000 to each of his four natural daughters and placed $250,000 in trust for an adopted daughter. For his son, Charles O. Canfield, the decedent directed the creation of a spendthrift trust with an initial principal of "one million dollars ($1,000,000.00) worth of securities or cash, less one hundred thousand dollars ($100,000.00)" which decedent felt his son had already squandered through "his incompetency in business matters and dissipation."
 The will provided that the trustee be directed to pay over to decedent's son $1,200 per annum. The trustee thereafter was directed to pay out of the additional net income such sums as it "may deem proper for the support, maintenance and education of my grandchildren, Orville and Laura Elaine Canfield, children of my said son Charles O. Canfield, in a manner suitable to their station in life, during their respective lives. And I direct that this provision shall be given a broad interpretation, to the end that both of my said grandchildren shall be given liberal educations, including travel abroad if deemed expedient in the judgment of the said trustee exercised by its said officers for the time being."
 Decedent provided further, however, that "If, in the judgment of my said trustee, ... my said son shall hereafter prove himself worthy of being entrusted with the expenditure of a larger annual income or allowance than that above given him, my said trustee may, in such event, at any time, and in such proportions and at such time as to payments as it shall deem advisable in the discretion of its said officers, increase the said allowance and pay over such increase to my said son up to the full limit of the net income of the said trust estate and any unexpended income which may have accumulated in the hands of the trustee, notwithstanding the provisions above made as to payments out of the income for the maintenance and education of my said grandchildren, Orville and Laura Elaine."
 The principal of the trust was given to the trustee "for the benefit of my son Charles O. Canfield and his children." Although the decedent initially provided that the trustee "shall, during the lifetime of my said son Charles O. Canfield, collect, recover and receive the ... income of said share of my estate ... to use, apply and pay over the net income *650 remaining ..." (italics added) in accordance with the foregoing directions, he thereafter indicated that "Upon and after the death of my said son these trusts shall continue for the benefit of my said two grandchildren, Orville and Laura Elaine, as hereinbefore provided, for and during the term of their respective lives."
 It thus appears that the three primary beneficiaries of the trust were the testator's son, Charles O. Canfield, and the two grandchildren, respondent Laura Elaine and Orville Canfield.
 At the time Mr. Canfield executed his will in 1912, his son Charles was thirty years of age, his grandson Orville was nine, and his granddaughter Laura Elaine was seven.
 The testator died in 1913 and on March 30, 1914, after appropriate proceedings in probate, Judge James C. Rives ordered the distribution of the trust estate to the trustee. The following are the terms of this order which established the trust and which, as appellants correctly state, are "the terms most directly pertinent for purposes of this appeal":
 "[T]he whole of the income of the trust estate mentioned in this item shall go to and be applied by said trustee solely for the benefit of said Charles O. Canfield and of his said two children, Orville and Laura Elaine, free, clear and discharged of and from any and all obligations of said Charles O. Canfield whatsoever. Upon and after the death of said Charles O. Canfield these trusts shall continue for the benefit of said two grandchildren, Orville and Laura Elaine, as hereinbefore provided, for and during the term of their respective lives. Immediately upon the death of either of said grandchildren, Orville and Laura Elaine Canfield, one-half of the principal or body of the said trust estate, in the form it shall then take, shall go and be distributed, in equal shares, to and among the surviving children of such grandchild and the issue of any child of such grandchild as shall then be dead, leaving issue surviving at that time, such issue to take among them the deceased parent's share, and no more, upon the principle of representation. If the grandchild so dying shall leave no issue, such grandchild's share of the principal of the trust estate shall go and be distributed to the other surviving grandchild, or, if such other grandchild be then deceased, leaving issue surviving, then to and among such issue, the then living issue of any deceased child of such grandchild to take among them the parent's share, and no more, upon the principle of representation. And if both said grandchildren shall die without leaving them surviving any child or children or issue of any *651 deceased child, then, and in that event, the body or principal of the said trust estate, shall go and be distributed, share and share alike, to and among the then surviving daughters of the said Charles A. Canfield, deceased, and the then living issue of any of his said daughters who may have died before said grandchildren, such issue, however, to take among them the parent's share, and no more, upon the principle of representation."
 Respondent's brother, Orville Canfield, died in 1918, as the result of accidental injuries. Thereafter the trust continued with Charles O. Canfield and his daughter, Laura Elaine, sharing the income until the death of Charles on June 15, 1965, at the age of 83 years.
 On October 20, 1965, following the death of decedent's son, Charles O. Canfield, Title Insurance and Trust Company, the trustee, filed its 44th account and report and petition for partial distribution wherein it alleged, inter alia:
 "The said Orville Canfield died prior to the death of Charles O. Canfield and left no children or issue surviving his death. Laura Elaine Canfield Pierce is alive.petitioner is informed and believes and on this basis alleges that pursuant to the language of the Order above quoted, and by virtue of the death of Orville Canfield without leaving children or issue surviving, that one-half (1/2) of the principal of the trust estate should now be distributed to Laura Elaine Canfield Pierce free of trust and that as to the remaining one-half (1/2) of the principal of the trust estate the trustee is authorized to distribute to Laura Elaine Canfield Pierce such of the income of the remaining one-half (1/2) share of the trust estate as the trustee may from time to time determine in accordance with paragraphs (b) and (d) of the order of court."
 Thereafter respondent filed her petition wherein she prayed for distribution of one-half of the principal of the trust estate together with the income therefrom since June 15, 1965. Appellants, who are the presently living daughters of the decedent and the living issue of said daughters, filed their written objections to the petitions for partial distribution as filed by the trustee and by respondent alleging, inter alia:
 "Objectors object to the aforesaid Petitions for Partial Distribution for the reason that no portion of the principal of the trust estate is now distributable to Laura Elaine Canfield Pierce, or to any other person. Instead, all of the principal of the trust estate should continue to be held in trust for and *652 during the term of Laura Elaine Canfield Pierce's natural life, and upon her death should be distributed to the persons entitled thereto, as identified in said decedent's Last Will and in the Order constituting a Decree of Distribution heretofore made in this matter."
 [1a] At the hearing upon these petitions and appellants' objections thereto, no evidence extrinsic to the record was presented. The interpretation placed upon the pertinent language of the trust provisions by the trial court is indicated by the following from its findings of fact:
 "A reasonable construction of the Order for Distribution dated March 30, 1914 in light of the over-all plan for distribution provided therein and the intent of the testator as disclosed from the wording and provisions set forth in said Order for Distribution, show that it was the intent of Charles A. Canfield that upon the death of his son, Charles O. Canfield and the death of one of his grandchildren, Orville Canfield or Laura Elaine Canfield Pierce, either before or after the death of his son, Charles O. Canfield, that one- half (1/2) of the trust estate would be distributed outright and free of trust to the then living issue of such deceased grandchild and that if such grandchild died without leaving any issue, that said one-half (1/2) of the trust estate would be distributed outright to the surviving grandchild."
 The order for outright distribution to respondent of one-half of the trust estate was entered in conformity with the foregoing findings and this appeal ensued. The average market value of the total trust estate between August 31, 1964, and June 30, 1965 was approximately $2,116,762.
 [2] Appellants and respondent agree that the intent of the testator is the controlling consideration in resolving any ambiguity that may exist in the provisions above quoted. When appellants quote these provisions in their brief, they insert the term "[sic]" following the appearance of the plural "trusts" in the second sentence thereof, thereby indicating their basic assumption that obviously this use of the plural was an inadvertent error. In part it is upon this questionable assumption that appellants premise their contention that despite the clear and concise directions providing for the distribution of "one-half of the principal or body" of the trust estate upon the death of the first of the grandchildren to die, either to his issue, or if none, to the survivor, nevertheless no such distribution may be made at this time because the surviving grandchild might subsequently die without issue and in such event they should be entitled to the entirety of *653 the original trust principal rather than the one- half that would then remain undisturbed. [fn. 1]
 While the construction of the trust provisions urged by appellants might not appear to be entirely unreasonable, its present plausibility stems largely from the fact, strongly stressed by appellants, that respondent is presently in her sixties and has neither children nor grandchildren. However, this ex post facto development is not a matter of great significance in the process of ascertaining the intent of the decedent who wrote his will at a time when respondent was only seven and her brother Orville was only nine years of age. In a letter addressed to counsel expressing his reasoning in making the challenged order, the trial court stated:
 "I think [the uncertainty in the terms of the trust relating to distribution] can only be resolved, however, in determining that the intent of the testator must have been to provide for a distribution upon the death of two beneficiaries of the trust, namely, his son, Charles O. Canfield, and one of the grandchildren. An examination of the trust provisions leads one to believe that his intent was that he anticipated the normal in life--that both grandchildren should survive their parent and that upon the death of one of the grandchildren only 1/2 of the trust estate would remain and the balance would be distributed. Thereupon, the trust would continue until the death of the second grandchild and the remaining balance would be distributed at that time. Adopting the reasoning that this was his wish, then the bothersome last clause referring to the death of both grandchildren without issue, or issue of deceased issue, would be effective only upon the death of the surviving grandchild."
 [1b] We find the trial court's determination of the decedent's intent in the premises entirely reasonable. From the entire tenor of decedent's will, it is manifest that although he was greatly disappointed at what he considered his son's defects of character, [fn. 2] he wished to insure that his needs would be *654 met throughout his lifetime and even to keep open to him the possibility of demonstrating that he was worthy to receive all the income from the trust and thereby assume directly the task of providing for his young children, Orville and Laura Elaine. However, recognizing the frequent illusory nature of "a father's hope," he provided that during the full term of his son's life, the trustee was to exercise its discretion in applying the income from the trust estate.
 Perhaps fearing that his son's children might share what he regarded as their father's improvident disposition, the decedent provided that "upon and after the death of my said son these trusts," which he quite naturally regarded as thereafter being of dual and separate nature, should continue for the benefit of his two grandchildren "for and during the term of their respective lives."
 [3] As observed by the trial court, it was entirely natural for the testator to assume the probability that a father whose life he considered to be "one of waste, dissipation and extravagance," would not enjoy a long life and probably would predecease his then young children. The fact that fate, as it often does, thereafter proved decedent to have been mistaken in making this supposed assumption does not authorize a trial or appellate court to rewrite a will under the guise of construing it to determine what the testator might have intended if he had survived to a later date and had written it in the light of subsequent developments. "The court ... attempts to ascertain the intent of the testator by the language of the will as understood by the testator at the time he wrote it, related to circumstances then present." (Italics added.) (Estate of Helfman, 193 Cal.App.2d 652, 655 [14 Cal.Rptr. 482].)
 If the decedent's son Charles had died when Orville and Laura Elaine were still minors and thereafter one of these children had died at a time when the survivor had reached his majority, it would not have seemed abnormal to discontinue the one-half of the trust that was no longer needed and distributed it to the survivor. We think it would have been reasonable to reject the contention that despite the clear requirement of the will that such distribution be made, nevertheless the testator must have entertained the unexpressed intention that such distribution should be delayed for an indefinite period against the possibility that the survivor might in the fullness of time prove childless.
 Of course, in addition to the reasonableness of the intent *655 ascribed to the testator by the trial court, it may be noted that if the terms of the testamentary trust simply be applied in the manner and form directed, there is actually no necessary ambiguity therein. That is, despite the finding of ambiguity, if the clear, concise and unambiguous requirement that one-half of the "principal and body of the said trust estate" be distributed upon the demise of the first grandchild, either to his or her issue or to the surviving grandchild, then the final paragraph of the will is neither ambiguous nor in conflict with the prior provisions since it will have reference only to "all the body or principal of the trust estate" then remaining.
 In essence, appellants contend that we should regard the last sentence of the challenged portion of the trust first. If this is done the prior provisions for partial distribution will not be disclosed and it will appear that the entirety of the trust estate will be intact and awaiting distribution at the time of the death of the surviving grandchild. By thus beginning with the desired conclusion, appellants argue that the precedent provisions of the trust providing for prior partial distribution should not be given effect because to do so would destroy the premise initially derived by ignoring such precedent provisions.
 [4] Finally, of course, it is unnecessary for this court to determine whether the construction of the trust urged by appellants is reasonable or unreasonable. We need only determine that the construction adopted by the trial court is not unreasonable. As stated in Estate of Northcutt, 16 Cal.2d 683, 690 [107 P.2d 607]:
 "Furthermore the construction placed by the probate court on the terms of the will is not unreasonable. And the rule is well settled that where the construction given to an instrument by a trial court is reasonable and appears to be consistent with the intent of the party making it, courts of appellate jurisdiction will not substitute another interpretation, even though it may seem equally tenable with that accorded by the trial court. [Citations.]"
 Contrary to appellants' assertion, this holding in Estate of Northcutt, supra, was not disapproved in Parsons v. Bristol Development Co., 62 Cal.2d 861 [44 Cal.Rptr. 767, 402 P.2d 839]. In fact, from the following quotation from Parsons at page 866, the exact converse appears to be true:
 "It is true that cases have said that even in the absence of extrinsic evidence the trial court's interpretation of a written *656 instrument must be accepted 'if such interpretation is reasonable, or if [it] is one of two or more reasonable constructions of the instrument.' (Prickett v. Royal Ins. Co., 56 Cal.2d 234, 237 [14 Cal.Rptr. 675, 363 P.2d 907, 86 A.L.R.2d 711]; Lundin v. Hallmark Productions, Inc., 161 Cal.App.2d 698, 701 [327 P.2d 166]), or if it is 'equally tenable' with the appellate court's interpretation (Estate of Northcutt, 16 Cal.2d 683, 690 [107 P.2d 607]; accord. Estate of Cuneo, 60 Cal.2d 196, 201 [32 Cal.Rptr. 409, 384 P.2d 1]). Such statements are not in conflict with Estate of Platt, supra, 21 Cal.2d 343 [131 P.2d 825], if they are interpreted, as they should be, to mean only that an appellate court must determine that the trial court's interpretation is erroneous before it may properly reverse a judgment. (See Estate of Shannon, 231 Cal.App.2d 886, 893 [42 Cal.Rptr. 278].) They do not mean that the appellate court is absolved of its duty to interpret the instrument."
 The order under review is affirmed.
 Roth, P. J., and Fleming, J., concurred.
NOTES
[fn. 1] 1. Neither party urges that the fact that Orville predeceased his father is a material consideration herein.
[fn. 2] 2. "Owing to the fact that the past conduct and life of my son Charles O. Canfield has been one of waste, dissipation and extravagance; and that his present associations, conduct and mode of living indicate no existing purpose of reform on his part; and that the probability of his reforming in the future, in my judgment, amounts to no more than a father's hope; and having seen in the neighborhood of more than one hundred thousand dollars ($100,000.00) squandered through his incompetency in business matters and his dissipation; I do will, ordain and declare as follows: ..."