[Civ. No. 27765. First Dist., Div. Two. June 21, 1971.]

RICHARD MIGLIORE, Plaintiff and Respondent, v.
SHEET METAL WORKERS' WELFARE PLAN OF NORTHERN
CALIFORNIA, Defendant and Appellant.

202

## COUNSEL

Smith, Paduck, Clancy & Wright and Phillip J. Smith for Defendant and Appellant.

Kessler, Kessler & Buchman and Stephen M. Kass for Plaintiff and Respondent.

## OPINION

**SHOEMAKER, P. J.**—This is an appeal by defendant Sheet Metal Workers' Welfare Plan of Northern California from a judgment awarding plaintiff Richard Migliore the sum of $1,932.

The facts are without dispute. Plaintiff, a sheet metal worker, was a union member to whom defendant had issued a policy of medical and hospital insurance. Plaintiff was injured on September 16, 1965, sustaining severe burns, and was initially admitted to Merritt Hospital, a private institution. Plaintiff was given emergency treatment and retained at Merritt for one day. He was then informed by his physician that Merritt lacked the facilities to treat his burns further, and he was advised that the necessary facilities were available only at Brooke General Hospital, a United States Army installation. Plaintiff's transfer to Brooke was arranged, and he was hospitalized and treated at that facility for a period of 45 days.

Plaintiff was not eligible for free hospitalization or treatment at Brooke, and he was admitted as a paying patient and was ultimately billed $1,932. Plaintiff claimed coverage under defendant's medical and hospital plan, but defendant paid only for the hospitalization at Merritt and refused to pay any part of the hospital expenses incurred after plaintiff was transferred to Brooke. Defendant admitted that plaintiff would have been entitled to full coverage had he been treated at a private hospital, and defendant based its refusal to pay the $1,932 solely upon an exclusionary provision in its policy which applied to hospitalization or medical treatment "furnished by or on behalf of the Federal or State Government."

The trial court found that the exclusionary clause was inapplicable and that defendant was required to pay plaintiff's hospital expenses at Brooke.

We approach our determination in this case with the following rules in mind:

■ An insurance policy must be interpreted in the light of the reasonable and normal expectations of the parties as to the extent of coverage. (*Atlantic Nat. Ins. Co.* v. *Armstrong* (1966) 65 Cal.2d 100, 112 [52 Cal.Rptr. 569, 416 P.2d 801]; *Schmidt* v. *Pacific Mut. Life Ins. Co.* (1969) 268 Cal.App.2d 735, 738 [74 Cal.Rptr. 367].) ■ ■ The understanding of the ordinary person is the standard to be used in construing an insurance contract (*Juzefski* v. *Western Cas. & Surety Co.* (1959) 173 Cal.App.2d 118, 121 [342 P.2d 928]; *Napavale, Inc.* v. *United Nat. Indem. Co.* (1959) 169 Cal.App.2d 119, 123 [336 P.2d 984]), and a policy should not be interpreted in such a manner as to withhold coverage that a layman would normally expect from it. (*City of Santa Monica* v. *Royal Indem. Co.* (1958) 157 Cal.App.2d 50, 54 [320 P.2d 136]; *Artukovich* v. *St. Paul-Mercury Indem. Co.* (1957) 150 Cal.App.2d 312, 324 [310 P.2d 461].) ■ In the construction of ambiguous policies, the literal terms of the policies themselves carry less weight than the substance of the transaction involved. (*Atlantic Nat. Ins. Co.* v. *Armstrong, supra,* at pp. 111-112; *Pacific Indem. Co.* v. *Liberty Mut. Ins. Co.* (1969) 269 Cal. App.2d 793, 798 [75 Cal.Rptr. 559].) ■ ■ The provisions and exceptions in an insurance policy must be strictly construed against the insurer, who is bound to use language clear to the ordinary mind. (*Prickett* v. *Royal Ins. Co.* (1961) 56 Cal.2d 234, 237 [14 Cal.Rptr. 675, 363 P.2d 907, 86 A.L.R.2d 711].) ■ If the insurer would create an exception to the general import of the principal coverage clauses, the exception must be phrased in clear and unmistakable language. (*City of Santa Monica* v. *Royal Indem. Co., supra,* at p. 54; *Osborne* v. *Security Ins. Co.* (1957) 155 Cal.App.2d 201, 207 [318 P.2d 94].) ■ Where a policy contains a sea of print defining the promised benefits, an exclusionary clause incidentally inserted in the policy merely creates an ambiguity and should not be literally interpreted so as to disappoint the reasonable and normal expectations of the insured. (*Schmidt* v. *Pacific Mut. Life Ins. Co., supra.*)

In the instant case, the provisions of the welfare plan of which plaintiff was a member are set forth in a booklet which purports to explain the plan "in non-technical language." Included under "General Provisions" is a clause entitled "Free Choice of Hospital and Doctor." It states, "You are free to choose your own doctor and your own hospital provided they meet the definitions shown in this booklet." The term "hospital" is defined

as "an institution which . . . is primarily engaged in providing—for compensation from its patients and on an in-patient basis—diagnostic and therapeutic facilities for the surgical and medical diagnosis, treatment, and care of injured and sick individuals by or under the supervision of a staff of doctors. . . ." Under the heading "Basic Benefits For You and Each Dependent" appears the sub-heading "Hospital Benefit." It states, "The plan will pay the actual expenses incurred for confinement in a hospital because of injury or illness. . . ."

The limiting or exclusionary provisions upon which defendant relies appear in two places in the booklet explaining the welfare plan. The fourth page of the booklet contains certain introductory material to the effect that the booklet is designed to explain the plan and that the complete text of the plan can be obtained elsewhere. There follows a paragraph stating that the benefits provided by the plan are not in lieu of and do not affect any Workmen's Compensation Insurance. "Also, it does not provide for hospital confinement, medical or surgical services, or other treatment furnished by or for the United States Government or any state government."

The second reference to this exclusion appears on page 31 of the booklet. Under the heading "Limitations," appears a statment that "Basic Benefits will not pay for: . . . d. hospitalization, surgery or medical services furnished by or on behalf of the Federal or State Government. . . ."

We are satisfied that an ordinary individual reading the general coverage provisions of the policy would be led to believe that he was entitled to choose his own doctor and hospital and that as long as the hospital was one which charged its patients for the services rendered, defendant would pay all the expenses incurred. The general provisions of the policy make it clear that the policy was designed to afford complete insurance coverage for hospital expenses which were actually incurred by the insured, but that defendant did not intend to offer its insured a windfall and pay him the value of medical services rendered without charge. ■ The limiting provisions of the policy applicable to hospitalization furnished by or on behalf of the federal or state government are entirely understandable and in accord with the policy as a whole if it be assumed that defendant merely intended to eliminate coverage for hospitalization furnished free of charge by the federal or state government to a particular insured. However, the exclusionary provisions in question make no sense whatever if they are interpreted as flatly excluding coverage for all hospitalization furnished by the federal or state government. Further, such an interpretation of those provisions would withhold coverage which any layman would normally expect and would vitiate the general provisions affording the

insured free choice of a hospital and full payment of the hospital expenses incurred.

It is apparent from the above analysis of defendant's welfare plan that the trial court adopted the only reasonable construction thereof when it concluded that plaintiff's status as a *paying* patient in a federal hospital rendered inapplicable the exclusionary provisions relied upon by defendant.

Defendant has argued on appeal that since its welfare plan was created under the authority of section 302(c)(5) of the Taft-Hartley Act (61 Stat. 157, 29 U.S.C. § 186(c)(5)), the trustees administering the plan were vested with broad discretionary powers and their decision to deny plaintiff's claim could not be interfered with unless it was arbitrary or capricious. Defendant concedes that there appears to be no California case in point, but it relies upon certain federal circuit court decisions as establishing the breadth of the trustees' discretion.

The difficulty with defendant's position is that the very cases upon which it relies contain language clearly indicating that where the trustees interpret a provision in an entirely unreasonable manner, their conduct can properly be characterized as arbitrary and capricious. Thus, in *Miniard* v. *Lewis* (1967) 387 F.2d 864, 865 [128 App.D.C. 299], the court concluded that "Since the trustees' interpretation is a reasonable one, its application in this case was not arbitrary or capricious." Likewise, in *Roark* v. *Lewis* (1968) 401 F.2d 425, 427 [130 App.D.C. 360], the court held that the trustees' interpretation was "a patently reasonable one" and therefore fell short of constituting arbitrary or capricious conduct.

In the instant case, defendant's refusal to pay for plaintiff's hospital expenses at Brooke was in no sense based upon a reasonable construction of its policy. To the contrary, defendant chose to interpret the exclusionary provisions of its policy in such a manner as to nullify the basic provisions of the policy granting the insured the right to select his own hospital and obtain reimbursement for the hospital expenses necessarily incurred. Defendant's interpretation was wholly unreasonable and violative of the established rules governing the construction of insurance contracts. Under these circumstances, there can be no doubt that defendant's conduct in denying plaintiff's claim was arbitrary and capricious.

Judgment affirmed.

Taylor, J., and Kane, J., concurred.