Filed 10/25/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| DONNA SCHWAN et al.,<br><br>     Plaintiffs and Appellants,<br><br>v.<br><br>VERLA D. PERMANN, as Trustee, etc., et al.,<br><br>     Defendants;<br><br>LOUISE K. MORRIS,<br><br>     Defendant and Appellant. | A151070<br><br>(Contra Costa County<br>Super. Ct. No. MSP14-00302) |
| DONNA SCHWAN et al.,<br><br>     Plaintiffs and Appellants,<br><br>v.<br><br>VERLA D. PERMANN, as Trustee, etc., et al.,<br><br>     Defendants;<br><br>WALTER C. YOUNGMAN,<br><br>     Defendant and Appellant. | A151073 |

This is the second appeal arising out of a dispute between various beneficiaries of The Walter C. Permann Separate Property Trust (Trust). Pursuant to the express terms of the Trust, Donna Schwan, Eileen Ostrosky, and Alexis Johnson (collectively, plaintiffs) are entitled to certain proceeds from the Trust if they are employed by Control Master

Products, Inc. (Control Master Products or company) at the death of Walter C. Permann, the owner, and his spouse, Verla D. Permann.[1]

Following a bench trial, the probate court excused Schwan's and Johnson's noncompliance with the employment condition because the assets of the company were sold in 2008, rendering satisfaction of the condition impossible. However, the court did not excuse Ostrosky's noncompliance because she retired prior to the sale of the company. The court also held the bequests to Walter C. Youngman, Jr., Walter's longtime friend and tax attorney, and his family were void. Three appeals were subsequently filed.[2] First, Louise K. Morris, another Trust beneficiary, appealed from the court's ruling upholding the bequests to Schwan and Johnson. Second, Ostrosky appealed from the adverse determination regarding her bequest. And, third, Youngman appealed from the adverse determination regarding his bequest. Schwan and Johnson subsequently filed a cross-appeal regarding an alleged ambiguity in the statement of decision regarding the survivorship provision. We reverse and remand for the probate court to make further findings and to clarify its statement of decision as herein directed. We otherwise affirm the court's order.

## I.  BACKGROUND

Walter owned and operated Control Master Products, a successful wire and cable distributing business. Walter's first wife was actively involved in the operations of Control Master Products until her death. Verla, Walter's second wife, was not involved in the operations of Control Master Products.

---

[1] As Walter and Verla share the same surname, we shall refer to them by their first names for ease of reference.

[2] These appeals are from the probate court's statement of decision, filed on February 17, 2017. Because the probate court did not subsequently enter a formal judgment or order, we exercise our discretion to treat the court's statement of decision as an appealable order and, for procedural purposes, hereafter refer to the statement of decision interchangeably as the "order." (See *Pangilinan v. Palisoc* (2014) 227 Cal.App.4th 765, 769; see generally Eisenberg, Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2017) ¶ 2:257.1, p. 2-153.)

Prior to 1999, Walter had a will that bequeathed gifts to Ostrosky and Schwan, as well as Nancy Olinger, who had been Walter's personal secretary. Those gifts were conditioned on Ostrosky, Schwan, and Olinger being "an employee and/or director of CONTROL MASTER PRODUCTS, INC., at [Walter's] death." At the time the will was drafted, Walter had no intention of selling Control Master Products and wanted to reward certain employees who remained with the company until his death.

In 1999, Walter established the Trust, which was drafted by Youngman. The Trust replaced Walter's prior will. The Trust provided for various distributions "Upon the death [of] Trustor's spouse, or upon . . . Trustor's death if the Trustor's spouse does not survive him." These distributions included ones to Schwan, Ostrosky, and Johnson if each "is employed by Control Master Products, Inc. at the death of Trustor and his spouse and if not, this gift shall lapse and augment the share of the remaining beneficiaries under this paragraph." Prior to the Trust's formation, Olinger retired from Control Master Products and she was not a named beneficiary in the Trust. The Trust named Schwan as a special trustee with some authority in running Control Master Products.

The Trust also included a bequest to Youngman. Because of this bequest, R. Kent Brewer, a now-retired family law attorney who practiced in the same building as Youngman, reviewed the Trust with Walter before it was executed. Brewer concluded Youngman had not coerced or otherwise pressured Walter into the bequest, and executed a certificate of independent review (certificate of review).

While drafting the Trust, Walter stated he wanted a financial incentive to keep Schwan, Ostrosky, and Johnson employed at Control Master Products following his death because he was concerned Verla could not run the company. The bequests also were designed to thank individuals who "materially assisted him in his business life and to the level of success he now enjoys." The Trust, as with his prior will, was created with the expectation that Walter would own Control Master Products at the time of his death.

The Trust beneficiaries—including Schwan, Ostrosky, and Johnson—were individuals with whom Walter, Verla, or Walter's first wife, had a significant relationship. Walter hired Schwan in 1978, and she eventually became general manager

3

of Control Master Products. Walter served as Schwan's mentor during her time with the company, and Schwan felt he treated her like a daughter. During her time at the company, Schwan joined Walter for cruises, dinners, picnics, the theater, and birthday and anniversary celebrations.

Ostrosky began working for Control Master Products in 1962 and retired from the company in 2007. She retired because she was no longer able to handle the physical aspects of her employment. Ostrosky often socialized with Walter, including going on cruises and trips and having dinner together. They continued to socialize after Walter sold the company, including trips and going to dinner, and frequently communicated.

Johnson was hired as a secretary for Control Master Products in 1997, but her duties increased over time. During her employment with the company, Johnson socialized with Walter, such as going out to lunch and dinner. Walter also brought her and her children gifts from his travels.

Walter attributed much of his success to his employees, and highly valued their loyalty. He repeatedly informed Schwan, Ostrosky, and Johnson they were beneficiaries in the Trust and would be "taken care of."

In 2008, Walter sold the assets of Control Master Products to Industrial Electric Wire & Cable, Inc. (IEWC). The sale was negotiated over a four-year period, but none of the plaintiffs were aware of Walter's intentions to sell the company until shortly before the deal closed. As part of the purchase agreement, IEWC acquired "all rights in and to the name 'Control Master Products, Inc.' and any and all derivations thereof," and imposed on Walter a covenant not to compete. IEWC required the noncompete agreement to prevent Walter from inducing former Control Master Products employees to leave IEWC. The purchase agreement also obligated Control Master Products to terminate all of its employees. Schwan and Johnson were then hired by IEWC the day after the sale closed, and Schwan continues to work at IEWC.

Following the asset sale, Walter changed the name of his company to Custom Model Products and sold model trains. Ostrosky performed some limited work for Custom Model Products, for which she was paid in cash. Walter also continued to make

4

statements suggesting Schwan, Ostrosky, and Johnson were beneficiaries in the Trust. For example, when Johnson expressed concern regarding her employment following the sale, Walter informed her that she was "taken care of" in the Trust. Similarly, shortly before his death, Walter informed Schwan that she would receive more than his close relative, Scott Heiser.

Plaintiffs jointly filed a petition to determine their status as beneficiaries and to challenge Youngman's right to inherit (petition). The petition sought to have the employment condition "stricken and excused as a matter of law" on various grounds, including " 'impossibility.' " Plaintiffs further argued the bequest to Youngman was disqualified under Probate Code section 21380 because Youngman drafted the Trust.

The petition was contested by beneficiaries Louise Morris and Youngman. Verla and Scott Heiser, as cotrustees, took "no position with regard to the relief sought by the petitioners . . . ." The probate court issued an order concluding the dispute was not ripe because one of the conditions precedent—Verla's death—had not yet occurred. On appeal, this court reversed the probate court's ruling. (*Schwan v. Heiser* (Jun. 30, 2015, A143400) [nonpub. opn.].)[3] In doing so, however, we expressly noted the substantive legal issues remained "for the trial court to decide."

On remand, the probate court conducted a multiday bench trial. Following trial, the court issued a tentative decision and proposed statement of decision. The court found Youngman and his family were "disqualified from any gift under the trust," Ostrosky's gift "lapsed due to failure to comply with the terms of the trust before the sale of the company," and Schwan's and Johnson's gifts "remain valid and enforceable, but only after Verla['s] death, and only if Ms. Schwan and Ms. Johnson survive [Verla]." All parties raised various objections to the tentative decision and proposed statement of

---

[3] We take judicial notice of our prior decision. (Evid. Code, § 452, subd. (d).)

decision.  The court subsequently issued its final statement of decision, which reached the same conclusions.  The parties timely appealed.[4]

## II.  DISCUSSION

### A.  *Interpretation of the Trust*

"The basic rule in the interpretation and construction of any will is that the intention of the testator must be carried out as nearly as possible.  [Citations.]  In ascertaining the testator's intent, courts employ an objective test: the intention to be determined is that which is *actually expressed* in the language of the will.  [Citations.] ' "The intention which an interpretation of a will seeks to ascertain is the testator's intention as expressed in the words of the will, not some undeclared intention which may have been in his [or her] mind." [Citation.]'  [Citation.] [¶] Another fundamental rule of the interpretation and construction of wills requires that every word should be considered and given some effect, if possible.  [Citation.]  'The words of a will are to receive an interpretation that will give every expression some effect, rather than one that will render any of the expressions inoperative . . . .'  [Citation.]  Moreover, the words used in a will must be given their ordinary, commonsense interpretation."  (*Estate of Simoncini* (1991) 229 Cal.App.3d 881, 888–889.)

"A reviewing court may exercise its independent judgment in interpreting an instrument provided that extrinsic evidence regarding interpretation is not conflicting.  [Citation.]  'The reviewing court has the duty to independently interpret the will when . . . the credibility of extrinsic evidence or the resolution of a conflict in the evidence' is not in issue.  [Citation.]  Thus, the reviewing court must exercise independent judgment to interpret a will where . . . conflicting inferences may be drawn from uncontroverted evidence."  (*Estate of Guidotti* (2001) 90 Cal.App.4th 1403, 1406.)

---

[4] Morris and Youngman filed separate appeals (case Nos. A151070, A151073, respectively) which were consolidated by this court on May 31, 2017.

### 1. The Trust Language

The Trust provided Schwan, Ostrosky, and Johnson would each receive a percentage of the Trust if they are "employed by Control Master Products, Inc. at the death of Trustor and his spouse and if not, this gift shall lapse and augment the share of the remaining beneficiaries under this paragraph." Neither the probate court nor the parties conclude the Trust contains a patent ambiguity. However, the court found the employment condition contained a latent ambiguity because it failed to "clearly express the settlor's intent concerning a sale of the company." Morris contends the court erred in so holding because it improperly sought to discern Walter's underlying motivations.

We find *Estate of Dye* (2001) 92 Cal.App.4th 966 instructive. There, the decedent's will provided the estate be given to his wife as her " 'sole and separate property.' " (*Id.* at p. 979.) But the decedent's wife predeceased him. (*Id.* at p. 970.) Decedent's son subsequently claimed the phrase " 'sole and separate property' " was ambiguous and argued two "adopted-away" sons should not inherit. (*Id.* at pp. 979, 970.) The son attempted to introduce evidence demonstrating his father believed his relationship to the adopted-away children had been severed and indicated the remaining son would inherit the estate. (*Id.* at p. 977.) The court found such evidence did not create an ambiguity "because they fail to raise a semantically plausible alternative candidate of meaning." (*Ibid.*) The court further explained: "When courts speak of using extrinsic evidence to rebut a presumption, this means evidence that a decedent's *expression in a will* actually has a different meaning than first appears, or a "latent" ambiguity. [*Estate of*] *Dodge* [(1971) 6 Cal.3d 311] is a good example. Lawyers use 'personalty' or 'personal property' in contrast to 'realty' and 'real property.' However, some people use 'personal property' to mean tangible personal effects, such as clothing, jewelry and so forth. Thus, when a will gives the 'personal property' to somebody, somebody else could come in with evidence outside the corners of the will to show what the decedent thought the word meant. [Citation.] . . . [¶] But an ambiguity, whether patent or latent, must reside *in* the will." (*Id.* at pp. 977–978.) The court concluded the son's position "is not a reasonable construction of the language, but an effort to insert new language and ideas

7

into the will. 'The instrument is silent upon the possibility of the wife predeceasing the testator. If he had contemplated a substitutional gift over he should have made such intention clearly appear.' [Citations.] 'Therefore, if having ascertained in the instant case that the provisions of the will are not reasonably susceptible of two or more meanings, we conclude that the only meaning to which the words expressed by testatrix are reasonably susceptible results in intestacy, we must give effect to her will accordingly.' " (*Id.* at p. 979; accord *Citizens Business Bank v. Carrano* (2010) 189 Cal.App.4th 1200, 1207–1208 [court cannot rewrite trust to attach restrictions to a term the settlors did not expressly include, especially when the term was not ambiguous]; *Estate of Canfield* (1967) 256 Cal.App.2d 647, 654 ["The fact that fate, as it often does, thereafter proved decedent to have been mistaken in making this supposed assumption [(that father would predecease his young children)] does not authorize a trial or appellate court to rewrite a will under the guise of construing it to determine what the testator *might* have intended if he had survived to a later date and had written it in the light of subsequent developments."].)

Here, plaintiffs are not seeking to interpret the term "employed." Nor is "employed" reasonably interpreted as "not employed if the company is sold." Instead, plaintiffs' construction of the employment condition would insert a new concept into the Trust. Moreover, the probate court concluded Walter did not anticipate selling his company. He thus could not have intended the word "employed" to include any exception in the event of such a sale. We are limited to " ' "the testator's intention as expressed in the words of the will . . . ." ' " (*Estate of Simoncini*, *supra*, 229 Cal.App.3d at p. 889.) Accordingly, we find the Trust's requirement that plaintiffs be employed at the time of Walter's and Verla's deaths unambiguous.[5]

---

[5] In so ruling, we do not opine on whether an ambiguity exists regarding the phrase "Control Master Products." (See part II.A.2.b.ii., *post*.)

8

## 2. Impossibility[6]

The probate court concluded Walter's sale of the company excused Schwan's and Johnson's failure to comply with the employment condition contained in the Trust because they were employed by the company until the date of the sale. The court further concluded Walter's subsequent failure to modify the Trust did not demonstrate an intent for the gifts to lapse. Morris contends the court erred because it improperly relied on a repealed Probate Code section, California cases predating the repeal, and inapplicable out-of-state authority. She argues such authority "is contrary to modern California law."

### a. Whether California Recognizes Impossibility as Excusing a Condition Precedent

Probate Code former section 142 stated: " 'A condition precedent in a Will is one which is required to be fulfilled before a particular disposition takes effect. It is to be deemed performed when the testator's intention has been substantially, though not literally, complied with. Nothing vests until such condition is fulfilled, except where fulfillment is impossible, in which case the disposition vests, unless the condition was the sole motive thereof and the impossibility was unknown to the testator or arose from an unavoidable event subsequent to the execution of the Will.' " (*Estate of Catlett* (1953) 117 Cal.App.2d 315, 317.) It is undisputed Probate Code former section 142 was repealed by the California Legislature in 1982.

Contrary to Morris's suggestion, we cannot conclude the doctrine of impossibility was rejected by the repeal of Probate Code former section 142. In repealing that section, the California Law Revision Commission (commission) stated: "Former Section 142 is not continued. The former section was not a modern statement of the law." (Tentative Recommendation Relating to Wills and Intestate Succession (Nov. 1982) 16 Cal. Law Revision Com. Rep. (1982) p. 2504 (1982 Tentative Recommendation).) The

---

[6] We are unaware of any authority, nor have the parties cited any such authority, holding a condition precedent must be found ambiguous before a court may consider whether the condition should be excused for impossibility. Accordingly, we next address whether the condition should be excused.

commission further stated those "matters" contained in former section 142—including impossibility—"are left to case law development." (1982 Tentative Recommendation, at p. 2504.)

The commission's observation that Probate Code former section 142 "was not a modern statement of the law" is entirely accurate even looking solely at California cases. Former section 142 imposed a number of constraints on the use of impossibility to excuse conditions precedent. But in *Estate of Pelletier* (1963) 221 Cal.App.2d 347, which concerned a condition of continued employment, the court took a more expansive view, identifying "[t]hree basic principles of testamentary construction," including that a "testamentary instrument is to be examined with a view to discovering the decedent's testamentary intent," and that "a liberal construction be given a testamentary disposition in favor of a beneficiary who was an employee of the testator." (*Id.* at p. 350.) The court further observed that " ' "uniform attitude of the courts of various jurisdictions . . . are favorable to the employee." ' " (*Id.* at p. 351.)

The introduction to the commission's report is also telling. The commission commenced by stating "no thorough substantive revision for over a century" had been made to California's law of wills and intestate succession. (1982 Tentative Recommendation, *supra*, 16 Cal. Law Revision Com. Rep., p. 2318.) "It remains a nineteenth century code in its premises, its phraseology, and its excessive detail." (*Ibid.*) As a consequence, "technical requirements" often invalidated wills, "even where there is no reasonable doubt that the testator intended the instrument as his or her will." (*Ibid.*) Similarly, "[o]ther provisions of existing law set forth mechanical rules that produce[d] results that [were] inconsistent with the testator's intent." (*Ibid.*) There had, however, "been many changes in the American family and in public attitudes since the last major revision" of the Probate Code in 1872, and "[a]s a result, the California Probate Code [was] overdue for a comprehensive revision." (1982 Tentative Recommendation, at pp. 2318–2319.) "The proposed law," the commission explained, would "make probate more efficient and expeditious" and, more importantly for our purposes, "provide rules that are more likely to carry out the intent of the testator." (*Id.* at p. 2319.) Furthermore,

10

"[b]y drawing freely from the Uniform Probate Code, the proposed law [would] promote national uniformity." (*Ibid.*, fn. omitted.) These comments indicate the revision of the Probate Code, including the repeal of former section 142, was intended to put the focus on the testator's intent and to endeavor to keep California law in the national mainstream. The commission's specific comment as to the repeal of former section 142—that "[t]he former section was not a modern statement of the law" and "[t]he matters which the former section governed are left to case law development"—promotes both objectives. (1982 Tentative Recommendation, at p. 2504.) The excusing of conditions precedent due to impossibility is grounded in implementing the testator's intent, and the development of this principle through case law will assist in keeping California's law consistent with the national norm. Accordingly, we look to case law and secondary sources to explain the state of the law at the time former section 142 was repealed.

In 1985—the same year the revisions to California's Probate Code took effect—the American Law Reports published an article entitled, "Effect of impossibility of performance of condition precedent to testamentary gift." (Annot. (1985) 40 A.L.R.4th 193.) We find this article instructive as to the "modern statement of law" at the time the Legislature repealed Probate Code former section 142 because it "collects and analyzes the state and federal cases in which the courts have discussed the effect of impossibility of performance of a condition precedent to a testamentary gift." (Annot., *supra*, 40 A.L.R.4th at p. 198, § 1[a], fns. omitted.) The background summary noted: "The modern tendency is to follow the rule that whether a gift is effective depends on a determination of what the testator intended if the condition became impossible to perform or what the testator probably would have intended if the testator had foreseen that the condition would become impossible to perform." (*Id.* at p. 199, § 2[a].) Similarly, the 1983 version of the Restatement of Property stated impossibility of performing a condition precedent for a donative transfer generally excused the condition provided that result complied with the ascertained intent of the testator. (Rest.2d Property, § 5.2.)

Courts, however, have varied in whether to excuse a condition precedent regarding ongoing employment when a testator's act or failure to act caused the impossibility.

11

(Annot., *supra*, 40 A.L.R.4th 193.) For example, in *Estate of Pelletier*, *supra*, 221 Cal.App.2d 347, decedent's will required the beneficiary to be in the decedent's employ at the time of his death. (*Id.* at pp. 348–349.) After the will was executed, the decedent liquidated most of his businesses. (*Id.* at p. 349.) At the time of the decedent's death, the beneficiary was performing limited tasks for him but had not been paid for such work. (*Id.* at p. 350.) The court found the beneficiary was continuously employed part-time by the decedent, and such work was the only possible employment available. (*Id.* at p. 351.) Noting the prevailing tendency of the courts to give a liberal construction to a testamentary disposition in favor of a beneficiary who was an employee of the testator, the court held that the beneficiary satisfied the employment condition because the decedent's liquidation of his businesses made it impossible for the beneficiary to resume the position he had when the will was executed. (*Id.* at p. 352.)

*Reese Estate* (1958) 19 Pa.D. & C.2d 299 [1958 Pa. Dist. & Cnty. Dec. Lexis 16] and *In re Bridge's Estate* (1953) 41 Wn.2d 916 [253 P.2d 394] (*Bridge*), reached similar conclusions. In *Reese*, a testatrix bequeathed to her daughter free rent for one year of the apartment they shared provided the daughter continuously resided with the testatrix until her death. (19 Pa.D. & C.2d at p. 300.) However, prior to the testatrix's death, she was admitted to a hospital and then, by her wish, taken to the home of her son. (*Id.* at p. 301.) The court concluded, "To penalize [the daughter] by denying her a year's free rent because she was not living under the same roof with her mother for such a short period of time after having been with her for nine years, would indeed be an inexcusable forfeiture." (*Ibid.*) The court noted any noncompliance was "entirely the doing of testatrix," and commented the daughter "could not be chargeable with such punitive consequences" for a situation over which the daughter had a minimal influence. (*Id.* at p. 302.)

Likewise, in *Bridge*, a will bequeathed money to certain individuals, provided if any of the individuals " 'are now employed by me or the Mary Bridge Hospital and are not so employed at the time of my decease,' " then such bequests would lapse. (*Bridge*, *supra*, 253 P.2d at p. 396.) Subsequent health issues required the decedent to retire and

12

liquidate his business. (*Id.* at p. 397.) The court noted: " 'There is obvious justice *in not holding the devisee or legatee responsible for the consequences of a breach of or failure to perform, a condition*, where such breach or failure *is not due to fault on his part, and where it is clear that such a contingency was not within the testator's contemplation.* And at bottom the question always is whether it was the testator's intention that an involuntary breach of condition should operate to defeat the gift.' " (*Id.* at p. 402, italics added by *Bridge*.) In applying this rule, the court concluded the beneficiaries were close associates and friends and the purpose was to benefit them. (*Id.* at pp. 403–404.) It noted "there [was] no indication that [the decedent] was aware at the time he executed the will that there was even a possibility that his medical business would be terminated before his death." (*Id.* at p. 403.) Instead, the court found the decedent's motive for the employment condition was to limit bequests in the event a beneficiary was terminated or voluntarily left his or her employment. (*Id.* at pp. 403–404.) In light of the decedent's motive for the bequest and "literal compliance therewith being impossible," the court excused the condition and upheld the bequests.[7] (*Bridge*, at p. 404.)

---

[7] Other cases have reached similar conclusions when third party conduct prevented a legatee from meeting a condition precedent. For example, in *Wooster School Corp. v. Hammerer* (Fla.Dist.Ct.App. 1982) 410 So.2d 524, a trust provided a gift to an individual provided he be employed by the grantor at the time of the grantor's death. (*Id.* at p. 525.) The grantor's nephew sent a letter terminating the employee's employment. (*Ibid.*) The court noted, "generally speaking, where a testamentary gift is subject to a valid condition, performance thereof is required." (*Id.* at p. 526.) "But where it becomes impossible for the condition to be performed without the fault of the donee, performance should be excused unless it be determined that performance of the condition was the controlling motive for the testator's making of the bequest. [Citation.] The determining inquiry should be whether the testator's intent in making a bequest was to benefit the donee or to obtain strict performance of some important act in any and all events, with the donee being paid, by way of the bequest, for performing the act." (*Id.* at p. 527.) The court concluded: "Hammerer had worked for [grantor] for some seven years, caring for her every need. As a result, she had showered many gifts upon Hammerer and his family. She had given him money, educated his children, and helped him purchase a home, among other things. She apparently had no relatives who were as close to her as Hammerer. . . . Thus, the implicit finding of the court that [grantor] intended the gift to vest even if the condition precedent was not performed through no fault of Hammerer is

In contrast to the above authorities, some cases have voided gifts where a testator's act or failure to act made performance of a condition precedent impossible. For example, in *Colvin v Pairpoint* (1887) 9 Ky.L.Rptr. 191 [1887 WL 1123], a testatrix bequeathed to a legatee a certain sum of money if he should continue to live with her and care for her. (*Id.* at p. 192.) The legatee, while continuing to care for the testatrix until her death, ceased to live with the testatrix because she " 'ceas[ed] to keep house, and ha[d] no place for him to stay with her.' " (*Ibid.*) The court concluded the legatee failed to meet the condition precedent because he failed to provide the companionship and personal presence required by the condition. (*Id.* at p. 193; accord *Perry v. Brown* (1912) 34 R.I. 203 [83 A. 8, 18] ["the clause under discussion was intended not primarily as a gratuity to [the employee], but rather as a provision for the support of [decedent's husband] in a contingency which has not occurred"].)

However, the weight of authority suggests at the time the Legislature repealed Probate Code former section 142, the "modern rule" recognized impossibility as an exception to the general rule enforcing conditions precedent. Morris has not identified any authority to suggest California—or any jurisdiction—has since rejected this approach. In fact, in *Estate of Hilton* (1988) 199 Cal.App.3d 1145, 1178, our colleagues in the Second Appellate District noted, "It is a settled canon of California jurisprudence that because the law favors early vesting of estates, conditions precedent are distained." This statement undermines Morris's assertion that we must strictly construe conditions precedent. Accordingly, the probate court properly considered whether impossibility excused the employment condition in the Trust.

---

supported by the record." (*Ibid.*; see *Estate of Carpenter v. Dinneen* (Ct. Chancery Del., Apr. 11, 2007) 2007 WL 2813784, *10–*11 [trust conditioned gift on ongoing employment; court refused to void gifts despite employees' termination because "the evidence is sufficient to support a reasonable, but not conclusive, inference that [grantor] intended that a dismissal without good cause would not necessarily preclude [employees] from receiving the specified gift"].)

### b. *Intent of Testator*

The authority discussed above make clear the initial inquiry is whether employment until death was the decedent's controlling motive in imposing the condition. (See, e.g., *Martin v. Young* (Md.Ct.App. 1983) 462 A.2d 77, 80 ["The question to be asked . . . 'is whether the testator's primary concern was the betterment of the individual or the performance of the condition.' "]; *Wooster School Corp. v. Hammerer*, *supra*, 410 So.2d at p. 527 ["But where it becomes impossible for the condition to be performed without the fault of the donee, performance should be excused unless it be determined that performance of the condition was the controlling motive for the testator's making of the bequest."].)  This approach is in accord with the Legislature's purpose in amending the Probate Code.  The California Law Revision Commission noted, "These changes are designed primarily to simplify the administration of an intestate estate and to carry out more effectively the intent of the decedent."  (1982 Tentative Recommendation, *supra*, 16 Cal. Law Revision Com. Rep., p. 2305; accord Selected 1983 Cal. Legislation, *Administration of Estates* (1983) 15 Pacific L.J. 423, 445, fn. omitted ["Chapter 842 makes substantial revisions in the Probate Code concerning wills, intestate succession, and related matters.  Among the most significant changes made by Chapter 842 is the strengthening of provisions aimed at effectuating the intentions of the testator when construing a will."].)

Courts have considered various factors in assessing a testator's intent, including whether (1) the will showed the testator anticipated the impossibility and nonetheless made the gift contingent on the performance of the condition; (2) the testator provided for a gift over to other beneficiaries in the event of a failure to perform the condition; (3) performance of the condition was the testator's controlling motive in making the bequest; (4) the testator knew of the impossibility of performing the condition prior to his or her death; (5) the testator, the donee, or a third person caused the impossibility and whether (a) that person's act was volitional or nonvolitional, or (b) that person was the intended beneficiary of the performance of the condition; (6) the testator or the intended beneficiary of the performance of the condition waived its performance; (7) there was

15

substantial compliance with the terms of the condition; and (8) the testator's purpose in making the gift would more likely be fulfilled by requiring or by not requiring literal compliance with the condition. (See Annot., *supra*, 40 A.L.R.4th 193 [collecting cases]; accord Rest.2d Property, § 5.2, com. g, p. 243 [failure to revoke instrument when testator has actual knowledge that performance of condition is impossible subsequent to execution of will but before death "normally tends to support an inference that the gift was to take effect despite the inevitable failure of its terms"].)

Here, the court properly considered relevant evidence regarding Walter's motive for the employment condition. Based on its assessment of the evidence presented, the court "decline[d] to infer that [Walter's] failure to modify the trust prove[d] an intent that the gifts lapse." The court concluded Schwan and Johnson "complied with the terms of the trust so far as was possible, and any further performance is excused." The court, however, declined to excuse Ostrosky's performance because she retired prior to the sale. Morris contests the court's holding as to Schwan and Johnson, whereas Ostrosky disputes the court's holding as to herself. We address each in turn.

### i. Donna Schwan and Alexis Johnson

Morris contends the court erred in excusing Schwan and Johnson from any further performance of the employment condition. She first argues Walter voluntarily sold the business five years prior to his death and could have subsequently amended the Trust. She contends his failure to do so evidences an intent for the gifts to lapse.

Undoubtedly, Walter's ability—and failure—to amend the Trust is a relevant factor that weighs against the doctrine of impossibility. But our task is not to assess whether there is conflicting evidence regarding Walter's intent. Nor is it to assess whether another court could have reached an alternate conclusion based on the evidence presented. Rather, our inquiry is limited to whether substantial evidence supports the probate court's judgment. As noted in *ASP Properties Group, L.P. v. Fard, Inc.* (2005) 133 Cal.App.4th 1257, 1266 (*ASP Properties Group*), a case cited by Morris, "Under the substantial evidence standard of review, 'we must consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference,

16

and resolving conflicts in support of the [findings]. [Citations.] [¶] It is not our task to weigh conflicts and disputes in the evidence; that is the province of the trier of fact. Our authority begins and ends with a determination as to whether, on the entire record, there is *any* substantial evidence, contradicted or uncontradicted, in support of the judgment. Even in cases where the evidence is undisputed or uncontradicted, if two or more different inferences can reasonably be drawn from the evidence this court is without power to substitute its own inferences or deductions for those of the trier of fact, which must resolve such conflicting inferences in the absence of a rule of law specifying the inference to be drawn.' "

Here, the probate court made various factual findings.[8] The findings relevant to this appeal include: (1) Walter did not intend to sell the company and did not anticipate ever selling it at the time the Trust was drafted; (2) the basis for requiring plaintiffs to work for the company was both to reward them for past, present, and future contributions and to ensure they continued working for the benefit of Walter or his surviving spouse; (3) once he sold the company, Walter's purpose in imposing the condition had been served; (4) Walter believed plaintiffs were " 'taken care of' " in the Trust despite his sale of the company; and (5) Schwan and Johnson complied with the terms of the Trust "so far as was possible." The court also expressed concern regarding Youngman's role in failing to amend the Trust because he substantially benefitted if plaintiffs' gifts failed. Accordingly, substantial evidence supports the probate court's decision to excuse Schwan and Johnson from the employment condition.

Morris next asserts the factual findings support her position rather than the probate court's conclusions. But her arguments primarily contend different inferences should be

_____

[8] Morris asserts she is not challenging any of the probate court's "evidentiary rulings or factual findings, but only the application of trust law to such facts." Accordingly, we need not assess whether substantial evidence supports the probate court's factual findings.

drawn from the evidence.[9]  And, as noted above, " 'if two or more different inferences can reasonably be drawn from the evidence this court is without power to substitute its own inferences or deductions for those of the trier of fact.' " (*ASP Properties Group*, *supra*, 133 Cal.App.4th at p. 1266.)

Finally, Morris's reply brief asserts certain factual findings are actually erroneous legal conclusions.  We disagree.  The court was not interpreting the Trust when it concluded Walter did not intend for the gifts to lapse in this instance.  Rather, it was assessing the "intent of the person imposing the restraint." (Rest.2d Property, § 5.2, p. 238.)  This is inherently a factual inquiry.  And substantial evidence supports the probate court's conclusion that Walter did not intend for the gifts to lapse.

While the express language of the employment condition is unambiguous, the probate court properly considered whether the doctrine of impossibility of performance applied.  The court concluded Schwan and Johnson "complied with the terms of the trust so far as was possible."  Impossibility, due to Walter's unilateral decision to sell the company, excused any further performance.  Substantial evidence supports this finding.

### ii.  Eileen Ostrosky

Unlike Schwan and Johnson, Ostrosky retired prior to the sale of the company.  As a result, the probate court concluded "her compliance [with the condition] was not rendered impossible by the sale of the company, but by her retirement.  While she was suffering from myriad health problems, she did not show that it was impossible for her to continue to work."  The court held Ostrosky failed to meet the condition of the gift and her performance was not excused.  Ostrosky argues the court erred because (1) her health

---

[9] For example, she does not dispute Walter did not intend to sell the company and did not anticipate ever selling it.  But she contends the condition indicated he expected there may be unanticipated circumstances in which plaintiffs would not be working for him.  She notes Walter could have limited the condition to certain events but did not do so.  While Morris's interpretation is one possibility, the probate court's interpretation— that Walter did not intend for the condition to apply in the event of a sale because he intended to own the company at his death—is equally possible.

18

required her retirement, which made further employment an " 'impossibility' "; and (2) she was employed by Walter until his death.

Ostrosky contests how the probate court weighed the evidence in assessing Walter's intent. But for the same reason Morris's challenges to the factual findings fail, so too must Ostrosky's. (See, e.g., *ASP Properties Group*, *supra*, 133 Cal.App.4th at p. 1266 [" 'if two or more different inferences can reasonably be drawn from the evidence this court is without power to substitute its own inferences or deductions for those of the trier of fact' "].) Here, the court found Ostrosky could work despite her health problems. The evidence also demonstrated another long-term employee of the company, Nancy Olinger, was included in the preexisting will. However, she retired and was omitted from the subsequent Trust. This evidence could reasonably suggest Walter was aware of the possibility of retirement and did not intend for the employment condition to be waived in such an event. (Accord Rest.2d Property, § 5.2, com. d, p. 240 ["Generally an inference that the transferor intended to excuse from performance is not justified where the impossibility arises out of a volitional act of the transferee."].) Testimony also demonstrated Walter wanted the gifts to be connected to plaintiffs' ongoing employment with his company. Accordingly, substantial evidence supports the probate court's conclusion that Ostrosky's noncompliance was caused by her own conduct, i.e., her decision to retire.[10] While Ostrosky cites contradictory evidence, such as Walter's statements that she is "in the trust," " 'this court is without power to substitute its own inferences or deductions for those of the trier of fact.' " (*ASP Properties Group*, at p. 1266.)

Ostrosky also argues she was, in fact, employed by Walter at the time of his death, thus satisfying the employment condition. Ostrosky objected to the proposed statement of decision on this basis, noting in part (1) she entered into an agreement with Walter

---

[10] Ostrosky also argues substantial compliance excuses the condition. But this argument, like impossibility, is based on weighing the evidence regarding Walter's intent and fails for the same reason.

where she agreed to be on call and work for Walter; and (2) she worked when Walter called her and last worked in July 2013. The final statement of decision did not specifically address these objections and instead stated, "While she worked a few hours for Walt and Custom Model Products, she was not an employee of Control Master Products either after the sale, or at Walt's death."

In order for Ostrosky's argument to potentially succeed, she must show her past work for Custom Model Products gave rise to an employee-employer relationship and that relationship existed at the time of Walter's death. Moreover, she must show her employment relationship with Custom Model Products satisfies the Trust's condition requiring her to be employed by "Control Master Products, Inc." On the latter point, we believe it may be appropriate to consider whether a latent ambiguity exists with regard to the phrase "Control Master Products, Inc."—i.e., did the phrase mean a company operating under that name (regardless of the operator), or did it mean Walter's company (regardless of whether it subsequently changed names).

While a statement of decision "need only recite ultimate facts supporting the judgment being entered" (*People v. Orange County Charitable Services* (1999) 73 Cal.App.4th 1054, 1071), the statement of decision is entirely silent as to these issues. Because these issues involve factual inquires, we remand for the probate court to decide in the first instance.

### 3. Modification

"In 1986, the Legislature substantially revised the Probate Code and 'codified the common law equitable power of trial courts to modify the terms of a trust instrument where such modification is necessary to serve the original intentions of the trustors. [Citation.]' [Citation.] Though this revision was intended to impose 'comprehensive' rules for modifying trusts [citation], the sections enacted do not expressly provide that they are the exclusive means to do so. Thus, 'the broader equitable power of trial courts to modify or reform a trust is preserved by operation of [Probate Code] section 15002, which expressly provides: "Except to the extent that the common law rules governing

20

trusts are modified by statute, the common law as to trusts is the law of this state." ' "
(*Bilafer v. Bilafer* (2008) 161 Cal.App.4th 363, 368, fn. omitted.)

Probate Code section 15409, subdivision (a) provides: "On petition by a trustee or beneficiary, the court may modify the administrative or dispositive provisions of the trust . . . if, owing to circumstances not known to the settlor and not anticipated by the settlor, the continuation of the trust under its terms would defeat or substantially impair the accomplishment of the purposes of the trust."[11] Similarly, " 'California courts have long had the equity power to modify the terms of a trust where such modification is necessary to preserve the trust or *serve the original intentions of the trustor. . . .*' " (*Ike v. Doolittle* (1998) 61 Cal.App.4th 51, 80, italics added by *Ike*.) While the California Supreme Court in *Adams v. Cook* (1940) 15 Cal.2d 352, 361, noted "the court may modify the terms of the trust to accomplish the real intent and purpose of the trustors," it clarified this statement in *Moxley v. Title Ins. & Trust Co.* (1946) 27 Cal.2d 457. In *Moxley*, the Supreme Court explained such modification is typically exercised only in "exceptional situations in which modification was decreed in order to carry out, rather than to defeat, the primary purpose of the trustor as expressed in the trust instrument." (*Id.* at p. 468; see also *Ike v. Doolittle*, *supra*, 61 Cal.App.4th at p. 81.)

Ostrosky raises similar arguments with respect to both Probate Code section 15409 and the court's equitable powers. She contends Walter did not anticipate her health issues and retirement, and would not have required her to continue employment as a condition to inheriting. Because of these allegedly unanticipated issues, Ostrosky claims the court should have modified the employment condition in the Trust to instead condition the bequest on her employment until retirement. She further argues the circumstances in this instance are "peculiar" and "exceptional" because the drafting

---

[11] Probate Code section 15409, subdivision (a) states a court may modify a trust "On petition by a trustee or beneficiary." Neither party has meaningfully briefed whether it was appropriate for the probate court to raise section 15409 sua sponte when it was not included as a ground for relief in Ostrosky's petition. Accordingly, we consider the issue waived and assume for purposes of this appeal that section 15409 was properly raised.

attorney was a donee. But this argument fails for the same reason her impossibility argument fails—namely, " 'if two or more different inferences can reasonably be drawn from the evidence this court is without power to substitute its own inferences or deductions for those of the trier of fact.' " (*ASP Properties Group*, *supra*, 133 Cal.App.4th at p. 1266.) The probate court considered the evidence and concluded Ostrosky's health and retirement *were* reasonably within the scope of issues anticipated by Walter. Accordingly, her modification argument fails.[12]

## B. *Youngman's Appeal*

The trial court disqualified the bequest to Youngman under Probate Code section 21380, subdivision (a), which establishes a rebuttable presumption that gifts to "[t]he person who drafted the instrument" are the "product of fraud or undue influence." The court noted at the time the Trust was created, drafter-beneficiaries were allowed provided another attorney completed a certificate of review. However, the statutory scheme was amended in 2010 to add Probate Code section 21384, which imposed an "independent attorney" requirement on the review process, and the trial court found the amendment retroactive. Because the certificate of review failed to comply with Probate Code section 21384, the court invalidated the bequest to Youngman.[13]

Youngman does not contest the trial court's analysis regarding the validity of the certificate of review or the retroactive application of Probate Code section 21384. We therefore need not, and do not, address whether section 21384 is retroactive. Instead, he solely contends plaintiffs lack standing to challenge his status as a Trust beneficiary because the probate court erred in excusing the employment condition as to Schwan and Johnson. However, we affirm the probate court's holding excusing the condition as to

---

[12] We need not address Schwan's and Johnson's modification arguments because we conclude they were excused from the employment condition based on the doctrine of impossibility. (See part II.A.2.b.i., *ante*.)

[13] In so holding, the court made specific findings that "the gift to [Youngman] was not the product of any affirmative fraud or undue influence. [Youngman] and [Walter] had a long-standing, friendly, trusting relationship, which was both professional and social. No one pressured [Walter] into these provisions."

Schwan and Johnson due to impossibility. (See part II.A.2.b.i., *ante*.) As Youngman notes, only "interested person[s]" have legal standing to contest the provisions of a will or trust. (*Estate of Plaut* (1945) 27 Cal.2d 424, 425–426; *Estate of Molera* (1972) 23 Cal.App.3d 993, 998.) Because Schwan and Johnson continue to have an interest in the Trust's residue, they have standing to challenge Youngman's beneficiary status.

Youngman next contends *if* this court finds Schwan and Johnson lacked standing to challenge his status, the subsequent award of attorney fees and costs must be reversed. Schwan and Johnson raise a host of arguments in response. We need not address those issues. Because we conclude Schwan and Johnson have standing to challenge Youngman's status, Youngman has not identified any basis for reversing the attorney fees and costs award.

## C. *Survivorship Provision Language*

Schwan's and Johnson's cross-appeal asserts the probate court's ruling regarding the survivorship provision is ambiguous. With regard to the survivorship provision, the probate court ruled, "The gifts to Donna Schwan and Alexis Johnson remain valid and enforceable, but only after Verla Permann's death, and only if Ms. Schwan and Ms. Johnson survive Ms. Permann." Schwan and Johnson contend this phrasing improperly suggests *both* Schwan *and* Johnson must survive Verla for either to inherit. They instead assert the survivorship provision "should only apply as to an individual Respondent; requiring that she alone survive Verla in order to take in the future." (Underscoring omitted.) In response, Morris contends Schwan and Johnson waived this issue by failing to raise it with the probate court.

Pursuant to Code of Civil Procedure section 634, an appellant must "bring any ambiguities and omissions in the statement of decision to the trial court's attention." (*Fladeboe v. American Isuzu Motors Inc*. (2007) 150 Cal.App.4th 42, 58.) "If the party challenging the statement of decision fails to bring omissions or ambiguities in it to the trial court's attention, then, under Code of Civil Procedure section 634, the appellate court will infer the trial court made implied factual findings favorable to the prevailing party on all issues necessary to support the judgment, including the omitted or

23

ambiguously resolved issues. [Citations.] The appellate court then reviews the implied factual findings under the substantial evidence standard." (*Id*. at pp. 59–60.)

Here, Schwan and Johnson filed objections to the proposed statement of decision. Those objections relate to the probate court's general imposition of a survival requirement and do not raise the issue briefed by Schwan and Johnson in their cross-appeal.

No party actually contends the Trust requires some type of joint survivorship.[14] It is thus unclear what "implied factual findings" we must infer. For purposes of this analysis, however, we shall assume the probate court intended to require such joint survivorship. If true, we must infer the probate court made implied factual findings that the Trust required joint survivorship. However, our inquiry does not end there. We must "review[] the implied factual findings under the substantial evidence standard." (*Fladeboe v. American Isuzu Motors Inc.*, *supra*, 150 Cal.App.4th at p. 60.) Here, such findings are not supported by substantial evidence. The court's interpretation of the survivorship provision was based on the Trust's language. Neither the statement of decision nor Morris identified any other evidence interpreting the survivorship provision. The language of the Trust imposes separate survival provisions on both Schwan and Johnson, and nothing in the Trust suggests these separate provisions should be joined in some manner. Accordingly, no evidence, let alone substantial evidence, supports an interpretation that would require both Schwan and Johnson to survive Verla in order to inherit.

---

[14] Likewise, we doubt the probate court intended to require both Schwan and Johnson to survive Verla for either to inherit. The statement of decision's substantive analysis of the survivorship provision concluded "while the Court has excused or modified the portion of the employment condition that is not consistent with [Walter's] intent, there is no basis for further excusing the other condition on the gift, i.e., that the employees survive Walter and Verla." This language suggests the probate court was merely enforcing the survivorship provisions as set forth in the Trust.

24

## III. DISPOSITION

We reverse the probate court's order and remand for findings as to whether Eileen Ostrosky's work for Custom Model Products satisfied the Trust's employment condition. We also modify page 37, lines 7–9 of the statement of decision to instead read as follows: "(1)(a) The gift to Donna Schwan remains valid and enforceable, but only after Verla Permann's death, and only if Ms. Schwan survives Ms. Permann; [¶] (1)(b) The gift to Alexis Johnson remains valid and enforceable, but only after Verla Permann's death, and only if Ms. Johnson survives Ms. Permann." The court's order is otherwise affirmed. Donna Schwan and Alexis Johnson may recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

_____
Margulies, Acting P.J.

We concur:


_____
Dondero, J.


_____
Banke, J.


A151070, A151073
*Schwan v. Morris*

26

Trial Court:   Contra Costa County Superior Court

Trial Judge:   Hon. Edward G. Weil

Counsel:

Hanson Bridgett LLP, Gary A. Watt, Michael B. McNaughton and Josephine K. Mason for Defendants and Appellants Louise K. Morris and Walter C. Youngman, Jr.

James K. Perry for Plaintiffs and Appellants Donna Schwan, Alexis Johnson and Eileen Ostrosky.