Filed 12/4/23  Newcomb v. Bates CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| GISELA NEWCOMB, | C097357 |
| Plaintiff and Appellant, | (Super. Ct. No. STK-PR-TR-2022-0000269) |
| v. | |
| ROBERT BATES, as Trustee, etc., | |
| Defendant and Respondent. | |

Maria Aguiar and respondent Robert Bates, husband and wife, created an intervivos trust meant to administer and eventually transfer their property upon their deaths.[1]  Maria passed away in 2021.  Robert thereafter became the sole trustee with control over the trust estate, which in his view included Maria's separate property interest in a Santa Clara, California rental property (the Santa Clara property or the property).

---

[1]     We will refer to all parties by their first names.  No disrespect is intended.

Maria's daughter, appellant Gisela Newcomb, filed a petition to compel redress, alleging Robert breached the trust by refusing to distribute the Santa Clara property upon Maria's death in accordance with the trust's requirements. The trial court denied the petition, finding distribution of the Santa Clara property as described in the trust could only occur after the death of both Maria and Robert. We disagree, and reverse.

FACTUAL AND PROCEDURAL BACKGROUND

The facts in this case are not in dispute. In November 2004, Robert and Maria created The Robert Bates and Maria Aguiar Trust (the trust), as settlors and trustees. The trust was formed as a revocable trust and provided for the administration and transfer (upon death) of Robert and Maria's community property and separate property.

In November 2016, Robert and Maria amended section 9.4 of the trust, entitled "Distribution of Gifts." The amendment changed the allocation, upon Maria's death, of Maria's separate property interest in real property located in Santa Clara, California. Specifically, the amendment granted a 25 percent interest in the Santa Clara property to Robert, 25 percent to Gisela, 25 percent to Maria's grandson, and 25 percent to Maria's granddaughter and great-granddaughters. The amendment did not amend section 9.4's language, beyond updating the named beneficiaries and their allotted shares. The Santa Clara property is the only gift mentioned in the trust, and the only subject of section 9.4.

The relevant provisions of the trust are as follows:

Article 2 explains that all the property subject to the trust is the trust estate. It further states that community property and separate property shall each retain their original character.

Article 3 states that the trust is revocable by both spouses during the settlors' joint lifetimes. With respect to separate property, only the settlor who contributed that property to the trust may revoke separate property assets from the trust.

Article 7, entitled "Power to Divide Trust" (some capitalization omitted), addresses the administration of the trust following the death of the first settlor, the

2

deceased spouse (here, Maria). Article 7 permits the surviving spouse (Robert) to create a bypass trust, through which the surviving spouse can disclaim property for tax purposes. If the surviving spouse does not elect to create a bypass trust, the trust assets are defined as the survivor's trust. Upon the death of the deceased spouse, the surviving spouse may amend, revoke, or terminate the survivor's trust, which "shall contain the Surviving Spouse's separate property that is part of the Trust Estate" and the surviving spouse's interest in the community estate. The record in this case does not reflect that Robert ever created a bypass trust.

Article 9 provides for the "Distribution of the Trust Estate" (some capitalization omitted), following the death of the second settlor, the surviving spouse. Section 9.1 grants the power of appointment to the surviving spouse, such that if the surviving spouse exercises this power in his or her lifetime, upon the surviving spouse's death, the trustee must distribute the remaining balance of the trust in any proportion and on the terms and conditions the surviving spouse shall appoint.[2] Section 9.1 goes on to state: "In the event the Surviving Spouse does not exercise [its] power of appointment over the Survivor's Trust, then on the death of the Surviving Spouse the Trustee shall distribute the Trust assets as further provided in this document." Section 9.2 then provides for termination of the survivor's trust after the surviving spouse's death, while section 9.3 provides for payment of the surviving spouse's debts outstanding at the time of death.

Section 9.4 contains the language in dispute here. As amended, it states: "Distribution of Gifts. Prior to the division of the Trust Estate into shares for the beneficiaries named below, the Trustee shall distribute the following gifts of Trust

---

[2] " 'A power of appointment is a power conferred by the owner of property (the "donor") upon another person (the "donee") to designate the persons ("appointees") who will receive the property [ ("appointive property") ] at some time in the future.' " (*Sefton v. Sefton* (2012) 206 Cal.App.4th 875, 882.)

assets . . . ." The first gift is to Robert, described as "Twenty-Five Percent (25%) of Wife's interest in the real property located at [] Santa Clara, California [], . . .outright, free of trust. This gift will be made at the Wife's death. If this beneficiary is not then living, this gift shall pass to her living issue, if any, by right of representation." Section 9.4 goes on to gift 25 percent of the real property to Gisela, 25 percent to Maria's grandson, and 25 percent to Maria's granddaughter and great-granddaughters, using the same language for each beneficiary as it used for Robert.

Section 9.5 describes the division of the residue of the trust estate, and sections 9.6 through 9.12 address the distribution of the trust assets.

Maria died on March 7, 2021, which made Robert the surviving spouse and sole trustee of the trust. Under the authority of Article 7, Robert transferred the trust estate, in which he included the Santa Clara property, from the trust to the revocable survivor's trust.

Thereafter, Gisela filed a petition to compel redress for breach of trust against Robert. It alleged that section 9.4 required distribution of the Santa Clara property upon Maria's death, and that Robert breached his duties as trustee by refusing to transfer the Santa Clara property to the intended beneficiaries following Maria's death. Accordingly, Gisela sought an order directing Robert to distribute the property in accordance with section 9.4, provide an accounting, and pay the beneficiaries their proportional share of rental income received. Robert opposed the petition. He argued that the trust remained fully revocable, and that he was not required to distribute the Santa Clara property under section 9.4, because section 9.4 is found in article 9, which addresses distribution of the Trust Estate after the death of both Maria *and* Robert.

The trial court denied the petition. It found that the trust was fully revocable after Maria's death because Robert transferred all the trust assets to the revocable survivor's trust. It further found that "[t]he Trust provisions governing the distribution of the real

4

property are contained in Article 9, governing distributions after the death of the Surviving Spouse, so any distribution now would be premature." Gisela timely appealed.

DISCUSSION

Gisela contends that the express and unambiguous intent of section 9.4 is to bequeath the Santa Clara property to the stated beneficiaries upon Maria's death, and because Maria has died, Robert as trustee is now obligated to distribute the property. She asserts that the placement of section 9.4's language in article 9 was a drafting error, as Maria's clear intent was for the distribution of her gift to occur upon her death, regardless as to whether she predeceased Robert. Gisela asks that the trust be reformed by moving section 9.4 into article 7, which governs the administration of the estate after the deceased spouse's death, to accurately express Maria's intent.

In response, Robert argues that section 9.4 must be strictly read within the testamentary framework of the trust, which divides administration into three phases: (1) the settlors' joint lifetimes (articles 2-6), (2) after the deceased spouse's death (articles 7-8), and (3) after the surviving spouse's death (article 9). He argues that because the Santa Clara property provision is found in article 9, which relates to the period after the death of the surviving spouse, distribution of the property is only required after the surviving spouse's death. In the meantime, Robert contends, the Santa Clara property remains part of the revocable survivor's trust, over which the surviving spouse has sole discretion under article 7.

I

*Applicable Legal Principles*

" 'The basic rule in the interpretation and construction of any will is that the intention of the testator must be carried out as nearly as possible. [Citations.] In ascertaining the testator's intent, courts employ an objective test: the intention to be determined is that which is *actually expressed* in the language of the will. [Citations.] " 'The intention which an interpretation of a will seeks to ascertain is the testator's

5

intention as expressed in the words of the will, not some undeclared intention which may have been in his [or her] mind.' [Citation.]" [Citation.]' " (*Schwan v. Permann* (2018) 28 Cal.App.5th 678, 685, [interpreting a testamentary trust]).)

" 'California courts have long had the equity power to modify the terms of a trust where such modification is necessary to preserve the trust or *serve the original intentions of the trustor. . . .* ' " (*Ike v. Doolittle* (1998) 61 Cal.App.4th 51, 80 (*Ike*); see also, Prob. Code, § 15409, subd. (a); Civ. Code, § 3399.) "In California, the common law equitable power of a trial court to modify or reform a trust extends to situations where . . . the trust instrument contains some expression of the trustor's intention, but a drafting error renders that expression ambiguous." (*Ike, supra*, at p. 82.) A court may modify a trust where "(1) a 'peculiar' or 'exceptional' circumstance made modification necessary to accomplish the purpose of the trustors, and (2) there was some expression in the trust instrument of the purpose of the trustors." (*Id*. at p. 83) "[A] drafting error in a trust instrument which renders ambiguous an expression contained therein regarding the administrative or distributive intentions of the trustor(s) constitutes a 'peculiar' or 'exceptional' circumstance . . . which may justify an equitable modification of a trust instrument to accomplish the purpose of the trustor(s)." (*Ibid.*)

Interpretation of a trust instrument presents a question of law for independent review on appeal when its meaning does not depend upon resolving a conflict in extrinsic evidence. (*Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 604.)

II

*Analysis*

The language of section 9.4, by itself, is clear. However, an ambiguity arises in light of its placement within the trust's administrative framework.

The Santa Clara property is to be distributed "[p]rior to the division of the Trust Estate." Maria's interest in the property is to pass on to her named beneficiaries "outright, free of trust. *This gift will be made at* [*her*] *death*." (Italics added.) The plain

6

text supports the reading that Maria intended the Santa Clara property to be distributed upon her death, whether she died before or after Robert. The event triggering the distribution of the Santa Clara property, therefore, is unambiguously intended to be Maria's death.

This reading is supported by other language in section 9.4, as well as its structure. For instance, Maria gifts 25 percent of the Santa Clara property *to Robert* "at the Wife's death." Had Maria and Robert intended distribution of the Santa Clara property to occur only after *both* of their deaths, as Robert claims, it would not make sense for Maria to name Robert as a beneficiary upon her death. But Maria not only gifted 25 percent of the property to Robert upon her death, she also provided that "*[i]f* this beneficiary [Robert] is not then living, [his] gift shall pass to her living issue, if any, by right of representation." (Italics added.) This provision clearly contemplates a scenario in which the property is distributed following Maria's death, whether that occurred before or after Robert's death.

Further, section 9.4 requires all distributions of the Santa Clara property "outright, free of trust," upon Maria's death. Again, the import of this language is clear. The settlors intended the trustee to transfer the property, upon Maria's death, directly to the named beneficiaries. Maria did not intend for Robert to transfer the property to the survivor's trust, as he has done, as such a transfer is not "free of trust." Robert's contention that he was free to move the Santa Clara property into the survivor's trust thus contradicts the unambiguous direction to bequeath the property outright and free of trust.

We also note the language of section 2.3, which provides that all separate property "shall retain its original character as separate property." It further states that "[e]ither Settlor may withdraw his or her separate property without the consent or concurrence of his or her spouse." This reflects the settlors' wishes to preserve separate property as such, and to each maintain independent control over his or her own separate property. By transferring the Santa Clara property—Maria's separate property—into the survivor's

7

trust, thereby gaining unfettered control over it for (at least) the remainder of his lifetime, Robert effectively changes its original character, in conflict with this provision.

Despite the foregoing, Robert asserts that we must ignore the plain language of section 9.4 and the above referenced provisions, and instead allow the trust's administrative framework to guide our interpretation. Under this approach, because section 9.4 falls under "Distribution of the Trust Estate" (some capitalization omitted), (rather than article 7, "Power to Divide Trust," (some capitalization omitted)), the Santa Clara property may only be distributed after both settlors die. This is not only owing to the title of article 9, Robert argues, but also because of the language in section 9.1, which naturally precedes section 9.4.

Section 9.1 contains two options for distribution of the estate after the surviving spouse dies. The first option is triggered where the surviving spouse has exercised his or her power of appointment. Under this option, the surviving spouse holds the power of appointment over the survivor's trust estate, and when the surviving spouse dies, the trustee must distribute the remaining property in the survivor's trust consistent with terms and conditions created through the surviving spouse's power of appointment. If the surviving spouse chooses to exercise the power of appointment, Robert contends conflicting provisions of the trust providing for distribution essentially become a nullity, which would include section 9.4. Instead, the trustee is guided by the distributions created through the power of appointment.

However, permitting Robert to transfer the Santa Clara property into the survivor's trust, thus subjecting it to his powers of revocation, amendment, and appointment, leads to an outcome clearly not contemplated by the settlors. Under this interpretation, Robert could then use, bequeath, or dispose of the Santa Clara property however he desired. He could even disinherit Maria's family and take the Santa Clara property for himself. Such a result would contradict the trust's express and specific intent to maintain the character

8

of separate property and to gift the property in equal shares to Robert and to Maria's heirs.

Applying the second option provided for in section 9.1 in the manner urged by Robert would lead to similarly problematic results. Under this option, if the surviving spouse does not exercise the power of appointment over the survivor's trust, section 9.1 provides that on the death of the surviving spouse, the trustee "shall distribute the Trust assets as further provided in this document." This language, Robert argues, means that distribution under the provisions that follow (including section 9.4) is only triggered *after* the death of the surviving spouse, and only *if* the surviving spouse does not use the power of appointment to amend or revoke provisions of the trust before his or her death. This again conflicts with the clear instruction of section 9.4 that Maria's death alone was to be the sole triggering event for the distribution of the Santa Clara property.

Although Robert cites to caselaw instructing that particular words in a will are subordinated to a will's administrative scheme or sequence, those cases are distinguishable. The two primary cases cited contain disputed language that was, by itself, ambiguous, such that reference to the testamentary scheme provided a useful context in which to interpret the ambiguous terms. (See, e.g., *Estate v. Goyette* (2004) 123 Cal.App.4th 67, 73 [using the will's general scheme to help interpret the meaning of "my money"]; *Estate of Nathan* (1949) 89 Cal.App.2d 789, 793-794 [testator's general intention of the will guided interpretation of the term "during"].) Here, the language of section 9.4 is clear. The Santa Clara property was to be distributed into quarters, as described and free of trust, at Maria's death. There is no ambiguous language to decipher.

For the reasons explained above, we find that the settlors' original intention was for Maria to gift the Santa Clara property, upon her death, as described in section 9.4. We further find that the placement of section 9.4 within article 9 and following section 9.1 creates an ambiguity. Given section 9.4's clear instructions, and in view of other

9

language in the trust, the placement of section 9.4 appears to be a drafting error. As we can discern the settlors' purpose from section 9.4's plain language, and a drafting error renders section 9.4 ambiguous, we are authorized to exercise our equitable powers to reform the trust. (*Ike, supra*, 61 Cal.App.5th at pp. 82-83.) Here, we find such a modification is justified to achieve the settlors' purpose. Accordingly, the language in section 9.4 should be removed from article 9 and placed in article 7, "Power to Divide the Trust," (some capitalization omitted).

## DISPOSITION

The trial court's denial of the petition is reversed. The trust is modified consistent with this opinion. The matter is remanded to the trial court to order that the trustee distribute the Santa Clara property outright and free of trust to the named beneficiaries, and to conduct further proceedings, as necessary. Gisela shall recover her costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

_____\s\_____,
Krause, J.

We concur:

_____\s\_____,
Robie, Acting P. J.

_____\s\_____,
Renner, J.